# In re S-Y-G-, Applicant

*Decided  August 2, 2007*

U.S. Department of Justice
Executive Office for Immigration Review

Board of Immigration Appeals

In her motion to reopen proceedings to pursue her asylum claim, the applicant did not meet the heavy burden to show that her proffered evidence is material and reflects "changed circumstances arising in the country of nationality" to support the motion where the documents submitted reflect general birth planning policies in her home province that do not specifically show any likelihood that she or similarly situated Chinese nationals will be persecuted as a result of the birth of a second child in the United States.

FOR APPLICANT:  Gang Zhou, Esquire, New York, New York

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Kenneth Padilla, Assistant Chief Counsel

BEFORE:   Board Panel:  HOLMES, GRANT and MILLER, Board Members.

HOLMES, Board Member:

In a decision dated January 25, 1996, an Immigration Judge denied the applicant's applications for asylum and withholding of deportation on the basis of his adverse credibility finding and ordered her excluded and deported from the United States.  We dismissed the applicant's appeal from that decision in an order dated August 21, 1997.  The applicant subsequently filed two motions to reopen, which we denied in decisions dated June 11, 2002, and January 22, 2004.  The case is now before us on remand from a September 6, 2006, order of the United States Court of Appeals for the Second Circuit, finding that substantial evidence supported the Immigration Judge's adverse credibility determination, but remanding for reconsideration of the applicant's late motion to reopen in which she asserted that she would be persecuted in China on account of having given birth to a second child in the United States.  *Shou Yung Guo v. Gonzales*, 463 F.3d 109 (2d Cir. 2006).   Having further considered the record before us pursuant to the Second Circuit's order, we will again deny the applicant's motion to reopen.

The court has requested that we address three documents submitted with the motion to reopen:  (1) a May 22, 2003, Administrative Opinion On Sanctions Against Family-Planning Violations By Zheng Yu He and His Spouse, issued by the Changle City Family-Planning Administration ("2003 Changle City Administrative Opinion"); (2) a 2003 Administrative Decision on Request for

Directive From Fuzhou City Administration on Family-Planning in Connection With Birth of a Second Child by Zheng Yu He of Changle City Municipal Bureau of Construction and His Spouse in USA, issued by the Fujian Province Department of Family-Planning Administration ("2003 Fujian Province Administrative Decision"); and (3) a July 1999 *Q&A for Changle City Family-Planning Information Handbook* ("*1999 Q&A Handbook*"). Both the applicant and the Department of Homeland Security ("DHS") have submitted additional evidence for our consideration on remand. The applicant has numerous attachments to her brief, some of which are different from, or updated versions of, the evidence previously presented in this matter.[1] The

_____

[1] The additional documents include the following: (1) the applicant's updated Application for Asylum and for Withholding of Removal (Form I-589), including an affidavit dated February 25, 2007; (2) copies of the applicant's passport, birth certificate, and marriage certificate, and the birth certificates of her two children; (3) an Immigration Judge's May 20, 2005, order granting the applicant's husband's asylum application; (4) a copy of a Notice of Action (Form I-797C) regarding a Petition for Alien Relative (Form I-130) filed by the applicant's husband on her behalf; (5) Population Research Institute, *UNFPA, China and Coercive Family Planning* (Dec. 12, 2001) (Investigative Report to which is appended *China's One-Child Policy: Coercive from the Beginning: Hearing on Coercive Population Control in China: New Evidence of Forced Abortion and Forced Sterilization Before the H. Comm. on Int'l Relations* (Oct. 17, 2001) (testimony of Steven W. Mosher, President, Population Research Institute)); (6) Letter from Members of Congress to George W. Bush, President of the United States (Jan. 31, 2002) (asking President Bush to zero-fund UNFPA, the United Nations Population Fund), *available at* http://www.lifesite.net/ldn/2002/feb/020201a.html; (7) *China: Human Rights Violations and Coercion in One Child Policy Enforcement: Hearing Before the H. Comm. on Int'l Relations* (Dec. 14, 2004) (statement of Rep. Chris Smith); (8) *Infanticide, Forced Abortions and Sterilizations in China's Linyi Province*, Sept. 16, 2005, http://www.lifesite.net/ldn/2005/sep/05091605.html; (9) Press Statement, U.S. Dep't of State, FY 2005 Funding for the UN Population Fund (UNFPA) (Sept. 17, 2005); (10) *Beijing "will not change family planning policy*," Apr. 24, 2006, AsiaNews.it; (11) Feng Changle, *Woman Forced to Abort Fetus at Seven Months*, Epoch Times, June 22, 2006; (12) Hillary White, Chine*se Woman Falls to Her Death Fleeing Forced Abortion of Twins*, July 4, 2006, http://www.lifesite.net/ldn/2006/jul/06070405.html; (13) Congressional-Executive Commission on China, 109th Cong., 2006 Annual Report 109 (Comm. Print 2006) (Population Planning), *available at* http://www.cecc.gov; (14) Wikipedia, the Free Encyclopedia, List of administrative divisions of Fujian, http://en.wikipedia.org/wiki/List_of_administrative_divisions_of_Fujian; (15) Changle City Family-Planning Administration, *Q&A for Changle City Family-Planning Information Handbook* (July 1999); (16) an affirmation of the applicant's attorney regarding the acquisition of documents (Feb. 27, 2007); (17) Changle City Family-Planning Administration, *Changle City Family-Planning Information Promotion Q&A for General Public* (Mar. 2005); (18) Nationality Law of the People's Republic of China (promulgated by the Standing Comm. Nat'l People's Cong., on and effective Sept. 10, 1980); (19) The American Embassy in China, US Citizen Services, Information Sheet on China

(continued...)

applicant also requests reopening and remand so that she may await the adjudication of an asylee relative petition filed on her behalf by her husband, whose asylum application was apparently granted.

## I.  FACTUAL AND PROCEDURAL HISTORY

The applicant is a 38-year-old female native and citizen of the People's Republic of China.  She arrived in the United States in October 1992 and was placed in exclusion proceedings because she lacked documents required for admission.  In her March 1993 asylum application, as well as an updated application submitted on remand, she claimed that she had one child, a son born on October 1, 1988.  At her asylum hearing in 1996 she stated that she had informally adopted an abandoned infant she found outside her door in 1991.  On December 25, 1995, the applicant gave birth to a daughter here in the United States.

After the hearing on the applicant's asylum application, the Immigration Judge found that she was not a credible witness regarding an alleged forced abortion and the existence of the adopted child in China, relying on numerous inconsistencies in her testimony.  He therefore concluded that the applicant failed to establish that she suffered past persecution on account of her

----

[1] (...continued)

(July 1, 2004) (briefing regarding entry/exit requirements and dual nationality); (20) U.S. Dep't of State, *Tips for Travelers to the People's Republic of China* (regarding dual nationality) (Jan. 20, 2007); (21) Changle City Family-Planning Administration, Administrative Opinion On Sanctions Against Family-Planning Violations By Zheng Yu He and His Spouse (May 22, 2003) ("2003 Changle City Administrative Opinion"); (22) copies of a Chinese identity document and United States visa for Zheng Yu He; (23) copies of a United States Passport and travel documents from the People's Republic of China for Jack Ren Hao (child of Zheng Yu He); (24) Fujian Province Department of Family-Planning Administration, Administrative Decision on Request for Directive From Fuzhou City Administration on Family-Planning in Connection With Birth of a Second Child by Zheng Yu He of Changle City Municipal Bureau of Construction and His Spouse (2003) ("2003 Fujian Province Administrative Decision"); (25) Fujian Population and Family Planning Committee, Administrative Decision in Response to Request for Directive From Fuzhou City Administration on Family Planning in Connection With the Birth of a Child in U.S.A. to Mr. Zheng and his Wife of Changle City Municipal Bureau of Construction (May 8, 2003); (26)Population and Family Planning Committee, *Main Responsibilities of Fujian Provincial Population and Family Planning Committee* (2006), *available at* Gov.cn (to which is attached an "About Us" explanation regarding Gov.cn, the Chinese Government's Official Web Portal); (27) Cheng Mai, *Petition for Review Remanded To Seek Asylum on Account of One-Child Policy On Basis of Fuzhou Family Planning Documents*, Sing Tao Daily, Nov. 27, 2006 (article on Second Circuit remand of case of Cong Shun Chen); (28) Wikipedia, the Free Encyclopedia, Sing Tao Daily, http://en.wikipedia.org/wiki/Sing_Tao_Daily.

opposition to family planning policies or that she had a well-founded fear of future persecution, and he ordered her excluded and deported to China. We dismissed the applicant's appeal, finding that the reasons identified by the Immigration Judge supported the adverse credibility finding. No petition for review of our decision was filed.

In June 1999, the applicant filed a motion to reopen to apply for protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46. 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("CAT"). In her motion she argued that she now has three children and that she would be forcibly sterilized if she were returned to China. We denied her motion to reopen, finding that the same events relied upon as the basis for her CAT claim had been considered and rejected as incredible by both the Immigration Judge and the Board.

In October 2003, the applicant filed a second motion to reopen to reapply for asylum and withholding of removal, attaching, inter alia, the three documents cited by the Second Circuit's remand order. The applicant argued that these documents evidenced changed country conditions, thereby excepting the motion from the time and number limits on motions to reopen under 8 C.F.R. § 3.2(c)(3)(ii) (2003). We denied the applicant's second motion to reopen, finding that the documents submitted in support of the motion "failed to show any change in Chinese policy or otherwise" that would warrant reopening. The applicant filed petitions for review of both of our decisions denying her motions to reopen. The court consolidated the two petitions for review.

## II. SECOND CIRCUIT REMAND

The Second Circuit denied the applicant's petition for review of our decision denying her first motion to reopen, finding that "[s]ince [the applicant's] CAT claim was premised on the conclusion that she would be subject to torture in the form of sterilization, and she offered no additional evidence beyond the story deemed false in the asylum hearing, the BIA's conclusion that she was not entitled to reopen to pursue the CAT claim was not an abuse of discretion." *Shou Yung Guo v. Gonzales*, *supra*, at 114. As to our denial of the applicant's second motion to reopen, the Second Circuit directed us to consider on remand "[the applicant's] evidence of changed circumstances and whether, in light of any such circumstances, she can establish a well-founded fear of persecution." *Id.* at 115. We note that because the applicant did not seek judicial review of our 1997 order, the Immigration Judge's adverse credibility determination remains the law of the case.

On remand, we have considered the three documents specified by the Second Circuit, as well as the numerous documents submitted by the applicant in her second motion to reopen and on remand. As discussed below, an alien in the applicant's circumstances may successfully reopen his or her asylum case if, on a case-by-case analysis, the genuine, authentic,[2] and objectively reasonable evidence proves that (1) a relevant change in country conditions occurred, (2) the applicant has violated family planning policy as established in that alien's local province, municipality, or other relevant area, and (3) the violation would be punished in a way that would give rise to a well-founded fear of persecution. *See Matter of J-H-S-*, 24 I&N Dec. 196 (BIA 2007). We have held that the applicant must meet the "heavy burden" of showing that "if proceedings before the immigration judge were reopened, with all the attendant delays, the new evidence offered would likely change the result in the case." *Matter of Coelho*, 20 I&N Dec. 464, 473 (BIA 1992); *see also INS v. Abudu,* 485 U.S. 94, 110 (1988) (stating that a motion to reopen is analogous to a motion for a new trial in a criminal case on the basis of newly discovered evidence and that the movant therefore faces a "heavy burden"); *Cao v. U.S. Dep't of Justice*, 421 F.3d 149, 156-57 (2d Cir. 2005).

## III. ANALYSIS

### A. Standards for Reopening

Given the fact that the applicant was found to lack credibility about her past interactions with birth control officials in China, she cannot meet her burden of proving that she suffered past persecution in China. Moreover, since the applicant's testimony as to her adoption of an abandoned child in China was also found not credible, we do not consider that child's existence in our adjudication of the motion. Thus, the limited issue remanded for our consideration is whether the applicant has produced enough evidence to show changed country conditions in China evidencing both that her two children (a son born in 1988 in China and a daughter born in 1995 in the United States) would be viewed as exceeding birth control limits in her local province, and that the sanctions applicable for such a violation would rise to the level of persecution. *See Matter of J-H-S-*, *supra*. The applicant bears the burden of

---

[2] For purposes of this decision, we will assume the authenticity of the evidence submitted by the applicant. However, this assumption does not imply that an asylum applicant bears no burden to make an effort to demonstrate the authenticity of evidence submitted with a motion to reopen. We will also assume the authenticity of the documents submitted with the DHS's brief on remand. We find it significant that the applicant has not challenged or addressed these documents in her brief, which was filed over a month after the DHS's brief. *Cf. Chhetry v. U.S. Dep't of Justice*, ___ F.3d ___, 2007 WL 1759472 (2d Cir. June 20, 2007).

proving that she has a well-founded fear of persecution in China by showing a subjectively genuine and an objectively reasonable well-founded fear of persecution. *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987).

The applicant's motion to reopen, otherwise barred by the 90-day deadline for filing motions to reopen, must meet the exception to the time and number limits when a motion to reopen to apply for asylum or withholding of removal is "based on changed country conditions arising in the country of nationality or the country to which removal has been ordered." Section 240(c)(7)(C)(ii) of the Immigration and Nationality Act, 8 U.S.C. § 1229a(c)(7)(C)(ii) (2000). The evidence must be material and the applicant must also show that it was unavailable and could not have been discovered or presented at the previous hearing. *Id.*; 8 C.F.R. § 1003.2(c)(3)(ii) (2007); *see also Xiao Xing Ni v. Gonzales*, ___ F.3d ___, 2007 WL 2012395 (2d Cir. July 12, 2007).

As with all motions to reopen, a motion based on changed country conditions must "state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material." Section 240(c)(7)(B) of the Act. In order to prevail on such a motion arising within the jurisdiction of the Second Circuit, "the movant must also establish *prima facie* eligibility for asylum, i.e., 'a realistic chance' that [s]he will be able to establish eligibility." *Poradisova v. Gonzales*, 420 F.3d 70, 78 (2d Cir. 2005) (quoting *Guo v. Ashcroft*, 386 F.3d 556, 563-64 (3d Cir. 2004), and citing *Reyes v. INS*, 673 F.2d 1087, 1089 (9th Cir. 1982)).

The Board has broad discretion over motions to reopen. Discretionary denials are appropriate if the movant fails to sustain the heavy burden of showing eligibility for relief or to proffer material, previously unavailable evidence, or if we are convinced that a favorable exercise of discretion on the asylum application is unlikely. *See Cao v. U.S. Dep't of Justice*, *supra*, at 156; *Matter of Coelho*, *supra*. In this regard, we note that we are not inclined to favorably exercise discretion in the case of an alien, such as the applicant, who was previously found to have offered incredible testimony to gain immigration benefits.

"Motions for reopening of immigration proceedings are disfavored for the same reasons as are petitions for rehearing and motions for a new trial on the basis of newly discovered evidence." *INS v. Doherty*, 502 U.S. 314, 323 (1992). The Supreme Court and the Second Circuit have both endorsed the strict limits on motions to reopen, especially in a deportation proceeding, "where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." *Id.*; *see also Wang v. BIA*, 437 F.3d 270, 274 (2d Cir. 2006) (noting the irony of a situation where aliens illegally in the United States "were permitted to have a

second and third bite at the apple" by claiming fear of persecution in China because of births of United States citizen children).[3]

In determining whether evidence accompanying a motion to reopen demonstrates a material change in country conditions that would justify reopening, we compare the evidence of country conditions submitted with the motion to those that existed at the time of the merits hearing below.[4]  In this case, we assess the evidence presented to determine whether the applicant has made a *prima facie* showing that she currently has a well-founded fear of persecution in China because she had two children, which would be viewed as a violation of birth control policies in her locality.  Evidence that is "largely cumulative" of that already in the record does not meet the burden required for reopening.  *Matter of Coelho*, *supra*, at 474.

## B.  Evidence Submitted in the Motion to Reopen

The applicant's second motion to reopen, which is based on changed country conditions, relied on three main documents.[5]  Two of these documents

---

[3] Although the situation in *Wang v. BIA*, *supra*, related to an alien who had United States children born to him while he was under an order of deportation, the case is nevertheless relevant to the applicant's situation, because she was living without status in the United States when she gave birth to her United States citizen daughter, lost her asylum case, and apparently waited for additional evidence to "accumulate" for purposes of reopening while she remained in contravention of the deportation order.

[4] The Immigration Judge considered and rejected the applicant's claim that the birth of her second child in the United States would subject her to persecution as a result of the application of sanctions related to family planning.  In so doing, he stated that the applicant believed that she could have two children and that the birth of a second child in the United States did not "appear to be a problem with the family planning policy in China."  The document of record bearing on this issue is a 1994 Department of State report, which states in regard to the applicant's home province that "[i]mplementation of birth control in Fujian province has been and still is more relaxed than in many of China's other areas."  Bureau of Human Rights and Humanitarian Affairs, U.S. Dep't of State, *China–Comments on Country Conditions and Asylum Claims* 19 (Jan. 1994).  The average births per woman in that locality was 2.73, higher than the national average of 2.3.  *Id.*  Although reports of forced abortion and sterilization existed, those sanctions were not officially approved, and reports of the sanctions were not officially verified by the Chinese Government.  *Id.* at 19-22.

[5] In addition to these three documents, the applicant also submitted the following with her 2003 motion to reopen:  (1) an updated affidavit signed by the applicant (Sept. 25, 2003); (2) an affirmation of the applicant's attorney regarding the acquisition of documents (Sept. 29, 2003); (3) Bureau of Democracy, Human Rights, and Labor, U.S. Dep't of State, *China Country Reports on Human Rights Practices–2002* (Mar. 31, 2003), *available at* http://www.state.gov/g/drl/rls/hrrpt/2002/18239.htm; (4) *Congressional Hearing on China's Coercive Population Control*, Oct. 17, 2001, http://www.lifesite.net/ldn/2001/oct/011017.html; and (5) Letter from Members of Congress
(continued...)

were prepared in 2003 by Fujian Province and Changle City family planning authorities in response to a government employer's inquiry regarding the application of sanctions to Zheng Yu He, an employee whose wife gave birth to a second child during a short visit to the United States. 2003 Changle City Administrative Opinion; 2003 Fujian Province Administrative Decision. The third document is a "handbook" regarding family planning in Changle City. *1999 Q&A Handbook*. We note that these documents were resubmitted by the applicant with her brief on remand, along with numerous other documents. *See supra* note 1. We will address those three documents and all of the related documents submitted on remand, including the identity and travel documents for Zheng Yu He and his son, who are the subject of the 2003 administrative decisions, as well as the March 2005 update to the *Q&A Handbook*.

## 1. Evidence Relating to Zheng Yu He

The 2003 Changle City Administrative Opinion, the 2003 Fujian Province Administrative Decision, and the travel and identity documents submitted on remand relate to the case of Zheng Yu He, a Chinese national who has no relationship or connection to the applicant except for the fact that they both hail from Fujian Province and have one child who is a United States citizen and another who was born in China. These documents were apparently issued in response to an inquiry from the Municipal Bureau of Construction about the proper sanctions to be applied against Zheng Yu He, who was one of its employees, and his spouse, Lin Yan Jun, for having a second child without permission while in the United States. The facts indicate that the couple were married in 1993 and had a daughter in September 1996 in China. In March 2002, Lin Yan Jun took a family trip to the United States and gave birth to a son during her visit. She returned to China in December 2002 with her second child.

The 2003 Changle City Administrative Opinion concludes that (1) because neither parent was a permanent resident overseas, the second child is considered a Chinese national; (2) reproductive behavior in violation of family planning policies by Chinese nationals who have not been granted permanent residence overseas, or at a minimum 3 years of temporary legal residence in a third country, shall be sanctioned in compliance with family planning rules and regulations as enforced at the local administrative level; and (3) the

---

[5] (...continued)

to George W. Bush, President of the United States (Jan. 31, 2002) (asking President Bush to zero-fund UNFPA, the United Nations Population Fund), *available at* http://www.lifesite.net/ldn/2002/feb/020201a.html.

behavior of both husband and wife in having a second child overseas is subject to enforcement action by family planning officials with local jurisdiction over the couple. The opinion recommends that proper sanctions should be in compliance with Fujian Province Family-Planning Regulations**,** the Directive on Penalties Against Communist Party Members and State Employees for Reproductive Behavior in Violation of Family-Planning Regulations, and the Supplement to the Directive on Penalties Against Communist Party Members and State Employees for Reproductive Behavior in Violation of Family-Planning Regulations.

The 2003 Fujian Province Administrative Decision also concludes that the family's decision to have a second child in the United States is not subject to any of the recognized exceptions to the one-child policy and is therefore "subject to sanctions and penalties applied under the Fujian Province Family-Planning Regulations to returnees from overseas in other categories." The related documents to the matter, including travel and identity documents for Zheng Yu He and his United States citizen son, reflect that under Chinese law, the child is viewed for domestic purposes as a national of China. Assuming the authenticity of these documents, we accept that they reflect that the "reproductive behavior" of Zheng Yu He and his spouse–giving birth to a son in the United States 5½ years after the birth of their daughter in China–was viewed by local birth control officials as a violation of local family planning policies. However, we cannot, as the applicant urges, simply extrapolate from that conclusion that the applicant's "reproductive behavior" also would be viewed as violating local family planning policies as interpreted under the "previously unavailable" documents.

As we held in *Matter of J-W-S-*, 24 I&N Dec. 185, 190 (BIA 2007), the most recent State Department report on the subject of asylum claims related to family planning indicated that in general, children born abroad are "not . . . counted" for birth planning purposes when the parents return to China. This conclusion is confirmed by the evidence submitted by the DHS on remand, to which the applicant has not responded. *See supra* note 2. Specifically, a January 9, 2007, letter to the DHS from the Department of State indicates that "children born abroad, if not registered as permanent residents of China . . . are not counted against the number of children allowed by China's family planning policy." Letter from Julieta Valls Noyes, Director, Office of Multilateral and Global Affairs, Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State, to Randa Zagzoug, Deputy Chief Counsel, DHS-ICE (Jan. 9, 2007). The letter also indicates that despite claims by asylum applicants of an "official" policy of sterilization after the birth of two children, the State Department was "not aware of such a policy at either the national or provincial level." *Id.* This evidence postdates the documents proffered by the applicant, contradicts certain documents regarding dual nationality, and comes from the State Department, a source that has been

endorsed as reliable by the Second Circuit as well as the Board. *See Lin v. Gonzales*, 446 F.3d 395, 400 (2d Cir. 2006); *Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 164-65 (2d Cir. 2006) *Matter of T-M-B-*, 21 I&N Dec. 775, 779 (BIA 1997). We therefore find it to be more persuasive than the evidence offered by the applicant.

Furthermore, we note that there was an interval of more than 7 years between the birth of the applicant's children, and that her stay in the United States was much longer than that of Zheng Yu He's wife. We therefore question whether the applicant would be viewed as having violated China's birth planning laws at all. *See* Bureau of Democracy, Human Rights, and Labor, U.S. Dep't of State, *China: Profile of Asylum Claims and Country Conditions* 21 (Oct. 2005) [hereinafter *2005 Profile*] (stating that provincial law indicates that married couples may apply to have a second child within certain time frames that are being increasingly relaxed).[6] Finally, unlike Zheng Yu He, the applicant is not a government employee or a Communist Party member. Thus, the 2003 Changle City Administrative Opinion and the 2003 Fujian Province Administrative Decision do not expressly apply to her.

Moreover, even assuming that the applicant could prove that her actions violated local birth planning laws, the documents relating to Zheng Yu He, standing alone, do not reflect any basis for fearing sanctions that would rise to the level of persecution. *Matter of J-H-S-*, *supra*, at 200-01. While the documents do indicate that "sanctions" would apply, they are likely to be economic ones, as descriptions of those types of sanctions abound in published reports. *See 2005 Profile*, *supra*, at 20. Specifically, as we noted in *Matter of J-H-S-*, *supra*, and *Matter of J-W-S-*, *supra*, the State Department has described administrative sanctions as involving job loss and demotion, loss of promotions, expulsion from the Communist Party and attendant loss of employment, and destruction of property. While the *2005 Profile*, *supra,* at 21, also noted reports of "local officials occasionally . . . forcibly performing abortions or sterilizations," the mere mention of such incidents, without details as to when, where, and how often this occurred, does not, on this record, indicate that it is widespread enough to find that the applicant has met her burden of submitting sufficient evidence to warrant reopening of the proceedings.[7]

---

[6] The *2005 Profile* was attached as an exhibit to the DHS's brief on remand.

[7] Accounts of isolated tragic events in documented reports do not necessarily indicate, without more, that any one person is at potential risk of that harm. *Cf. Xiu Ling Chen v. Gonzales*, ___ F.3d ___, 2007 WL 1661584 (7th Cir. June 11, 2007).

## 2.  1999 and 2005 *Q&A Handbooks*

We turn now to the 1999 and 2005 copies of the *Q&A Handbook*, which allegedly reflect implementation policies relating to the family planning laws of Fujian Province.  The earlier version was proffered with the applicant's motion to reopen, and the latter version accompanied the applicant's brief.  The document, as translated, is prefaced by a statement that it relates to "Part One: Legal Aspects of Family Planning," apparently indicating that it recites the law as it stands in Changle City as to family planning matters.  The language at issue is at paragraph 16, which asks, "What birth-control measures are to be imposed upon birth of a first child/a second child pursuant to the provincial family-planning regulations?"  The document indicates in apparent response: "An IUD insertion is mandatory upon birth of a first child; sterilization upon birth of a second child."  The applicant argues that this policy is a change since her 1996 hearing below, and she requests reopening on this basis.

We first note that there is nothing in the applicant's submission that would indicate that the 1999 policy is a change from the previously enunciated policy.[8]  In fact, she argued back in 1996 that she feared sterilization pursuant to the application of China's family planning policies on account of the birth of her child in the United States and her alleged adoption of an abandoned child in China.  This is the same argument she continues to make today.  Change that is incremental or incidental does not meet the regulatory requirements for late motions of this type.  Similarly, a new report or a new law is not evidence of changed conditions without convincing evidence that the prior version of the law was different, or was differently enforced, in some relevant and material way.

Moreover, on its face the document does not indicate that *forcible* sterilizations are mandated in Fujian Province after the birth of a second child.  This distinction is key, because documentation on family planning enforcement indicates that efforts are aimed primarily at encouraging compliance with birth limits through incentives, education, and other methods.  *See 2005 Profile*, *supra*, app. A at 38-46 (Population and Family Planning Law of the People's Republic of China, adopted Dec. 29, 2001).  However, under the relevant portions of the Act, refugee protection extends only to instances of "forced" abortion or sterilizations.  *See* section 101(a)(42) of the Act, 8 U.S.C. § 1101(a)(42) (2000).

---

[8]  We refer to this as a 1999 policy because the 2005 document does not reflect any change in substance from the 1999 version.

### 3.  Other Documents

Finally, we address the other documents that the applicant submitted with her brief on remand.  *See supra* note 1.  Attached to the brief are documents related to an effort by the Population Research Institute and Representative Chris Smith to convince the United States not to fund the United Nations Population Fund because of allegations that it supports coercive family planning measures instituted by China.  As these documents do not relate specifically to the applicant or to Fujian Province, and because of the localized nature of family planning enforcement efforts, they are not material to the applicant's claim and do not meet the threshold for reopening set forth above.

Other documents attached to the applicant's brief include a report from the Population Research Institute relating to family planning enforcement in Sihui County, an article about enforcement efforts in Linyi City in Shandong Province, and documents relating to incidents of abusive family planning enforcement efforts directed against individuals in Henan Province and in Shuguang.  As none of these relate to the same province or locality as the applicant's, they are of no help in showing that she has a "realistic chance" of establishing eligibility for relief.  *See Poradisova v. Gonzales*, *supra*.  All of the other documents submitted with the applicant's brief either are too general to support her in establishing eligibility for relief, or they have already been addressed (e.g., the documents relating to the case of Zheng Yu He).

### 4.  Pending Petition for an Alien Relative

We also must deny the applicant's motion to reopen insofar as it is based on the pending asylee relative petition filed on her behalf by her husband, whose asylum application was granted.  We note that the applicant has provided no evidence that the petition has been granted.

## IV.  CONCLUSION

In sum, for the reasons discussed above, the proffered evidence does not indicate that conditions in China have changed materially since the last hearing such that the applicant would have an objective well-founded fear of persecution upon return to China.  Once again, we note that it is the applicant's heavy burden to show that her proffered evidence is material, reflects "changed circumstances arising in the country of nationality," and supports a *prima facie* case for a grant of asylum.  *See Ni v. Gonzales*, *supra*; *see also Matter of Coelho*, *supra*.  The applicant simply has not met this burden.  Indeed, she is still making the same argument she first offered in 1996, i.e., that as a result of the birth of her second biological child in the United States and her adoption of the Chinese child, she will be viewed in China as having violated family

planning laws in her local province of Fujian and will be subjected to forced sterilization because of that violation. The applicant has not submitted evidence to establish a sufficiently realistic chance of showing eligibility for asylum–based on the birth of a second child in the United States in 1996–to justify a decision to reopen proceedings for a new round of litigation at this point in the proceedings.

Accordingly, the applicant's second motion to reopen will be denied.

**ORDER:** The motion to reopen is denied.