[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-13472

Non-Argument Calendar

_____

ZHONG JIANG,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A096-112-273

_____

Before ROSENBAUM, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Zhong Jiang petitions for our review of the Board of Immigration Appeals's ("BIA") order denying his motion to reopen his removal proceedings. He contends that, since his final order of removal in 2005, his conversion to Christianity and the materially changed conditions in China regarding the treatment of Christians warrant reopening his proceedings.

Upon consideration, we find that the BIA did not abuse its discretion in denying Jiang's motion based on his failure to establish a material change in conditions in China to overcome the 90-day time bar. So we deny Jiang's petition for review.

I.

A.    Initial Removal Proceedings

Jiang is a native and citizen of China. He entered the United States at the Atlanta airport and applied for a Visa waiver. Jiang filed an I-589 application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), alleging he was persecuted in China for his association with Falun Gong.[1]

---

[1] Falun Gong is a new religious movement in China that blends aspects of Taoism, Buddhism, and the meditation techniques of Qigong (a traditional

In support of his I-589 application, Jiang provided the 2002 country report on China published by the U.S. State Department. The country report stated that while China's constitution allowed for religious freedom, in reality, the government was cracking down against unregistered religious groups. According to the report, the Chinese government targeted underground Protestant and Catholic groups, as well as groups that it considered to be cults like Falun Gong. The report found that all religious groups were required to register with the State. It also stated that the leaders of unauthorized religious groups were the target of harassment, interrogations, detention, and physical abuse.

An Immigration Judge ("IJ") held a hearing in May 2003. Jiang testified that he came to the United States because he was a member of Falun Gong and was persecuted in China. He said that he practiced Falun Gong in private with another member. Jiang attested he was afraid to return to China because he would be arrested. He asserted that he would continue to practice Falun Gong if he returned to China.

The IJ found that Jiang's testimony was not credible. It determined that there was no nexus between any persecution Jiang feared and his practice of Falun Gong because he practiced in

---

martial art) with the teachings of Li Hongzhi, its founder and leader. *See Jiang v. U.S. Atty. Gen.*, 155 F. App'x 470, 470 (11th Cir. 2005). In 1999, the Chinese government banned Falun Gong as a "threat to social and political stability" and began a nationwide crackdown against it. *Id.*

private.  The IJ thought that Jiang had been coached and his belief in Falun Gong was not genuine.  So the IJ denied Jiang relief and ordered that he be removed to China.

Jiang appealed the IJ's decision to the BIA, and in 2005, the BIA affirmed the removal order.  The BIA found that the IJ's adverse credibility determination was supported by the evidence, based on many inconsistencies in Jiang's testimony.  It also found that Jiang failed to present corroborating evidence or to explain discrepancies in the evidence that he presented.

Jiang then petitioned for our review of the BIA's decision. We denied Jiang's petition. *Jiang v. U.S. Atty. Gen.*, 155 F. App'x 470 (11th Cir. 2005).

## B.    Jiang's Motion to Reopen

In March 2019, Jiang moved the BIA to reopen his proceedings.  He submitted a declaration and claimed to have converted to Christianity after his cousin was released from immigration detention and members of his cousin-in-law's church prayed for his cousin's release.  Jiang submitted an updated I-589 application, which said that he feared returning to China because he would be arrested, detained, and harmed by the Chinese government because of his belief in Christianity.  He reasserted that he had practiced Falun Gong while he was in China.

Jiang also presented several reports in support of his motion to reopen, including, among other things, country reports from 2002, 2005, and 2008, the U.S. State Department's 2011

International Religious Freedom Report, the U.S. State Department's 2017 International Religious Freedom Report, the Congressional-Executive Commission's 2018 report, the 2016 U.S. State Department International Religious Freedom Report, and an excerpt from the 2018 report from the U.S. Commission of International Religious Freedom.  Jiang argued that these reports established a recent increase in the persecution of underground churches in China.  He further argued that this evidence was not available at the time of his initial proceedings and that it established worsened conditions for members of underground churches in China.

The government responded that Jiang had failed to demonstrate changed country conditions that would warrant reopening. It relied on the 2002 country report on China, which stated that authorities were "quick to suppress religious, political, and social groups perceived to be a threat to the government."  The 2002 report also said that the Chinese government targeted members of underground churches as part of a campaign against crime.  The government argued that because the Chinese government had been mistreating Christians since the time of Jiang's initial proceedings, Jiang did not meet his burden of establishing changed country conditions.

The BIA denied Jiang's motion to reopen.  It found that Jiang failed to establish a material change in conditions in China to excuse his untimely filing of the motion.  The BIA stated that the country reports available during Jiang's initial proceedings showed that the government in China closed underground house churches

and detained and harassed leaders of those churches.  It found that the evidence reflected that unauthorized Christian groups faced "significantly adverse conditions in China even before [Jiang's] final removal hearing."

Alternatively, the BIA found that even if the conditions in China excused the untimeliness of Jiang's motion, he failed to show that those purported changes were material to his eligibility for relief.  The BIA noted that Jiang's new claim of fear of persecution because of his conversion to Christianity was similar to his previous claim based on his practice of Falun Gong because both were based on his proclaimed religious beliefs.  The BIA determined that Jiang had not presented evidence sufficient to rehabilitate his credibility following the IJ's adverse credibility determination in his original proceedings.  Considering the adverse credibility determination from the original proceedings, the BIA concluded, Jiang's declaration was not sufficient to establish that the mistreatment of Christians in China was material to his claim for relief and protection from removal.  Additionally, the BIA found that even if Jiang established that he would continue to practice Christianity in China, he did not prove that he would join an underground church instead of a state-sponsored church.  Finally, the BIA declined to exercise its discretion to reopen proceedings *sua sponte* because Jiang did not establish that his case showed "truly exceptional situations" where doing so is proper.

21-13472                  Opinion of the Court                        7

This petition for review followed.[2]

## II.

We review the denial of a motion to reopen an immigration proceeding for an abuse of discretion, under which we determine only whether the BIA exercised its discretion arbitrarily or capriciously. *Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252, 1256 (11th Cir. 2009). "The BIA abuses its discretion when it misapplies the law in reaching its decision," or when it fails to follow its own precedents "without providing a reasoned explanation for doing so." *Ferreira v. U.S. Att'y Gen.*, 714 F.3d 1240, 1243 (11th Cir. 2013). The petitioner bears a heavy burden in proving arbitrariness or capriciousness because motions to reopen in the context of removal proceedings are particularly disfavored. *Zhang v. U.S. Att'y Gen.*, 572 F.3d 1316, 1319 (11th Cir. 2009).

---

[2] As an initial matter, we don't have jurisdiction to review the BIA's decision not to *sua sponte* reopen proceedings. *Lenis v. U.S. Att'y Gen.*, 525 F3d 1291, 1294 (11th Cir. 2008). Also, Jiang does not address this issue on appeal, so he has forfeited this challenge. *See United States v. Campbell*, 26 F.4th 860, 871–72 (11th Cir. 2022).

We can, however, review the portion of the BIA's decision regarding the motion to reopen. *See Reyes Mata v. Lynch*, 576 U.S. 143, 148 (2015) (explaining that a court's jurisdiction to review the BIA's denial of motion to reopen remains unchanged if the BIA also states that it will not exercise its separate *sua sponte* authority to reopen the case, as the fact that "courts lack jurisdiction over one matter (the *sua sponte* decision) does not affect their jurisdiction over another (the decision on the [petitioner]'s request)").

We review claimed legal errors, such as whether the agency failed to give reasoned consideration to an issue, de novo. *Jeune v. U.S. Att'y. Gen.*, 810 F.3d 792, 799 (11th Cir. 2016).  The BIA does not give reasoned consideration to a claim when it misstates the contents of the record, fails to adequately explain its rejection of logical conclusions, or provides justifications for its decision that are unreasonable and do not respond to any arguments in the record.  *Id.*  Reasoned-consideration review is not a review for whether the agency's findings have evidentiary support, but only for whether the decision is "so fundamentally incomplete," in light of the facts and claims presented in the case, "that a review of legal and factual determinations would be quixotic."  *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1302 (11th Cir. 2015).

A motion to reopen proceedings must ordinarily be filed within 90 days of the date of a removal order and must state the new facts that will be proven at a hearing to be held if the motion is granted and be supported by affidavits or other evidentiary material.  INA § 240(c)(7), 8 U.S.C. § 1229a(c)(7).  However, there's no time limit on the filing of a motion to reopen to apply for asylum or withholding of removal based on "changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding."  INA § 240(c)(7)(C)(ii), 8 U.S.C. § 1229a(c)(7)(C)(ii).

The movant cannot circumvent the requirement of changed country conditions by demonstrating only a change in personal circumstances. *Chen v. U.S. Att'y Gen.*, 565 F.3d 805, 809–10 (11th Cir. 2009). In *Zhang*, we held that the petitioner's birth of her two children constituted a change in country conditions in China, rather than a change in personal circumstances, when she provided evidence of an increased local enforcement of China's one-child policy through increased forced sterilization. *Zhang*, 572 F.3d at 1320. By contrast, in *Blake*, we held that a petitioner, who had testified against a Jamaican gang kingpin that had been in power since at least the 1990s, only demonstrated a change in personal circumstances "because he testified, not because Jamaica became more hostile to informants between 2009 and 2019." *Blake v. U.S. Att'y Gen.*, 945 F.3d 1175, 1180 (11th Cir. 2019).

In *Matter of S-Y-G-*, the BIA stated that, in determining whether evidence accompanying a motion to reopen demonstrated a material change in country conditions that would justify reopening, it compared the evidence of country conditions submitted with the motion to those that existed at the time of the merits hearing below. *Matter of S-Y-G-*, 24 I. & N. Dec. 247, 253 (BIA 2007). The BIA concluded that change that was incremental or incidental did not meet the regulatory requirements and that a new report or a new law was not evidence of changed conditions without convincing evidence that the prior version of the law was different, or was differently enforced, in some relevant and material way. *Id*. at 257. In *Matter of F-S-N-*, the BIA, relying on *Matter of*

*S-Y-G-*, found that, considering provided country reports for Cameroon in the two years following a noncitizen's 2016 removal hearing indicated that unrest had continued and conditions had not materially deteriorated in that period, her general allegations, without more, did not establish a material change in country conditions. *Matter of F-S-N-*, 28 I. & N. Dec. 1, 6 (BIA 2020).

Here, the BIA acted within its discretion in denying Jiang's motion to reopen because his motion was time-barred and he failed to establish an exception to the bar. Jiang failed to provide sufficient evidence that conditions for members of unregistered house churches in China were materially different than the conditions at the end of his original proceedings in 2003. The BIA's order denying relief reflects that it considered the country reports available at the time of Jiang's original removal proceedings and the reports available at the time of his motion to reopen. *See*; *Matter of S-Y-G-*, 24 I. & N. Dec. at 253; *Jeune*, 810 F.3d at 799.

Jiang argues that the BIA failed to analyze evidence that he presented and asks us to take judicial notice of various reports on country conditions. But we can consider only evidence in the Administrative Record when reviewing an order of the BIA. INA § 242(b)(4)(A), 8 U.S.C. § 1252(b)(4)(A) ("the court of appeals shall decide the petition only on the administrative record on which the order of removal is based"); *see also* INA § 242(a)(1), 8 U.S.C. § 1252(a)(1) ("the court may not order the taking of additional evidence" under 28 U.S.C. § 2347(c)). It was Jiang's burden to present

evidence to the BIA that proceedings should be reopened. *Zhang*, 572 F.3d at 1319.  That burden was not met.

Based on the 2002 country report in the record, the Chinese government targeted and harassed leaders of unregistered churches and closed many of those churches.  It's true that Jiang did provide evidence that, as of 2018, the government continued to harass leaders of underground churches and evict the churches from their places of worship.  But the evidence Jiang offered did not establish that there was more than an incremental increase in the repression of house churches.  Instead, Jiang has shown a change in his personal circumstances based on his conversion to Christianity, which is not sufficient to establish a change in country conditions.

In sum, Jiang has failed to show a material change in circumstances in China since his final order of removal in 2005 to overcome the 90-day time bar for filing a motion to reopen.  The BIA did not abuse its discretion in determining that his motion to reopen was untimely.  We deny Jiang's petition for review.

**PETITION DENIED.**