**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 30, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

MOREES MURQUS HARMEZ,

    Petitioner,

v.

MERRICK B. GARLAND,
United States Attorney General,

    Respondent.

No. 22-9503
(Petition for Review)

_____

**ORDER AND JUDGMENT***
_____

Before **HARTZ**, **KELLY**, and **BACHARACH**, Circuit Judges.
_____

Morees Murqus Harmez petitions for review of the Board of Immigration

Appeals (Board) order denying his motion to reopen his removal proceedings.

Exercising jurisdiction under 8 U.S.C. § 1252(a)(1), we deny his petition for review.[1]

---

* After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Our jurisdiction to review "final order[s] of removal," 8 U.S.C. § 1252(a)(1), encompasses appeals from the Board's denial of a motion to reopen a removal proceeding. *See Mata v. Lynch*, 576 U.S. 143, 147 (2015); *Infanzon v. Ashcroft*, 386 F.3d 1359, 1361 (10th Cir. 2004).

## I. Background

Petitioner is a native and citizen of Iraq. He was admitted to the United States as a Chaldean Christian refugee in 2008 and was granted lawful permanent resident status. In 2016, the government charged him as removable based on his 2015 conviction of a drug offense in Utah state court. *See* 8 U.S.C. § 1227(a)(2)(A)(iii) (providing that aliens convicted of an aggravated felony are deportable).

Petitioner appeared at the October 2016 hearing pro se and admitted the factual allegations against him. The Immigration Judge (IJ) advised him that he could seek protection under the Convention Against Torture (CAT) and avoid removal if he showed it was more likely than not that he would be tortured based on his religion with the instigation, consent, or acquiescence of an Iraqi official. He told the IJ he feared being tortured if returned to Iraq but said he did not have any evidence or witnesses. The IJ explained the types of evidence he could submit to support a CAT claim and offered to continue the hearing so he could prepare an application, but he said "he did not want to apply." R. at 280. The IJ then found him removable as charged and ordered him removed to Iraq. He waived his right to appeal.

Between 2017 and 2021, Petitioner filed four motions to reopen, which were all denied.[2] The second and third motions, which were based on an alleged change in

---

[2] Petitioner filed the first motion to reopen before the IJ. *See* 8 C.F.R. § 1003.23(b)(1) (providing that an IJ may reopen a case in which he or she has rendered a decision unless jurisdiction is vested with the Board). After the Board dismissed his appeal of the IJ's denial of the first motion, he filed the other three motions to reopen with the Board. *See* 8 C.F.R. § 1003.2(a) (governing motions to reopen in cases in which the Board has rendered a decision).

the law concerning whether his state drug conviction was a removable offense, are not relevant to the issues before us. The first and fourth motions sought reopening to apply for relief from removal based on changed country conditions in Iraq. The fourth motion is the one at issue here, but the factual and procedural background of the first motion is also relevant, and is described more fully below.

The Board denied the fourth motion as untimely and successive, concluding that Petitioner's evidence was not new and did not prove that country conditions in Iraq had materially worsened since he filed the first motion to reopen, so did not support excusing the time and numeric limitations. The Board also denied reopening on the ground that Petitioner had not made a prima facie showing that he was eligible for CAT protection. He now seeks review of that order.

## II. Legal Standards

We review the Board's denial of a motion to reopen for abuse of discretion. *Infanzon v. Ashcroft*, 386 F.3d 1359, 1362 (10th Cir. 2004). The Board "abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Id.* The Board also abuses its discretion by committing a legal error or relying on a factual finding that is not supported by substantial evidence. *See Qiu v. Sessions*, 870 F.3d 1200, 1202 (10th Cir. 2017).

Motions to reopen removal proceedings are disfavored because they threaten the strong public interest in finality of removal orders. *Maatougui v. Holder*,

738 F.3d 1230, 1239 (10th Cir. 2013).  Thus, the movant "bears a heavy burden to show the [Board] abused its discretion."  *Id.* (internal quotation marks omitted).

Ordinarily, a noncitizen may file only one motion to reopen and must do so within 90 days of the date of the final removal order.  *See* 8 U.S.C. § 1229a(c)(7)(A) (number limit); *id.* § 1229a(c)(7)(C)(i) (deadline); § 8 C.F.R. § 1003.2(c)(2) (motions before the Board); *id.* § 1003.23(b)(1) (motions before the IJ).  But the 90-day deadline does not apply to motions to reopen proceedings to apply for CAT protection

> based on changed circumstances arising in the country of nationality or the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing.

8 C.F.R. § 1003.2(c)(3)(ii) (motions before the Board); *see also* 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.23(b)(4)(i) (motions before the IJ).  The regulations, but not the statute, allow for the same exception to the numeric limitation.  *See Wei v. Mukasey*, 545 F.3d 1248, 1254 n.2 (10th Cir. 2008).  "Change that is incremental or incidental does not meet the regulatory requirements . . . ." *In re S-Y-G-*, 24 I. & N. Dec. 247, 257 (B.I.A. 2007).

A motion to reopen must "state the new facts that will be proven" and provide supporting evidence.  8 U.S.C. § 1229a(c)(7)(B).  The Board may not grant reopening unless the "evidence sought to be offered [upon reopening] is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1).  "The new facts . . . must demonstrate that if proceedings before

the IJ were reopened . . . the new evidence offered would likely change the result in the case." *Maatougui*, 738 F.3d at 1240 (internal quotation marks omitted).

An applicant for CAT relief must show that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). Although evidence of gross, flagrant or mass human rights violations is relevant, *see* § 1208.16(c)(3)(iii), such evidence "does not . . . constitute sufficient grounds for determining that a particular person would be in danger of being subjected to torture upon his return to that country," *In re J-E-*, 23 I. & N. Dec. 291, 303 (B.I.A. 2002) (en banc), *overruled on other grounds by Azanor v. Ashcroft*, 364 F.3d 1013 (9th Cir. 2004). "Specific grounds must exist that indicate the individual would be personally at risk." *Id.*

### III. Application

**A. Additional Factual and Procedural Background**

In his 2017 motion to reopen Petitioner claimed he had evidence that was unavailable at the time of his hearing that showed changed country conditions in Iraq, and he sought reopening to apply for CAT protection and other relief.[3] In support, he submitted news articles and the U.S. Department of State 2016 Country Report, which indicated that ISIS had occupied northern Iraq—the part of the country he was

---

[3] Petitioner also sought reopening to apply for asylum and withholding of removal, but the IJ concluded he was ineligible for such relief because of his aggravated felony conviction.

from—and was persecuting and committing crimes against minority groups in its control, including Chaldean Christians.

The IJ denied the motion as untimely. The IJ concluded Petitioner did not satisfy the requirements for excusing the filing deadline because although the documents he presented were published after the October 2016 hearing, they described conditions that existed before the hearing, so did not establish that country conditions had materially changed since then. In particular, the IJ noted that the 2016 Country Report described adverse conditions that had been causing Christians to flee Iraq for many years, and especially since 2014, when ISIS occupied northern Iraq. The IJ also noted that the news articles described violence against Iraqi Christians since November 2015. Finally, because Petitioner had rejected the opportunity to apply for CAT protection in his original proceedings, the IJ found he did not show exceptional circumstances warranting a discretionary decision to reopen sua sponte despite the untimeliness of his motion. The Board agreed and dismissed Petitioner's appeal of the IJ's order.

Petitioner filed the motion at issue here in 2021, claiming country conditions in Iraq had changed since he filed the 2017 motion, making it more likely that he would be tortured if returned to Iraq. He claimed he would be tortured because he is Christian, has become Americanized, has a criminal conviction, and might be suspected of being an ISIS sympathizer because he has no Iraqi security documents.

In support, he filed the U.S. Department of State 2019 Country Report, written statements from three witnesses he proffered as experts, and letters from family

members. The 2019 Country Report and witness statements detailed ISIS's take-over of northern Iraq in 2014, its treatment of Christians since then, the resulting Christian exodus, the Iraqi government's response, the defeat of ISIS in 2017, and ISIS's continued persecution of Christians despite its defeat. One witness said the situation for Christians had worsened since the defeat of ISIS because the Iraqi government is weak so cannot protect them and corrupt so has not returned property appropriated from them. Another said the government's "long track record of failing to protect its minority citizens," including Christians, had "not changed dramatically" since the defeat of ISIS in 2017, but minority populations continued to "dwindle," making those who remained more vulnerable. R. at 84. A third witness said Christians had been persecuted for years before the ISIS occupation and many fled Iraq. He said the situation for those who remained got worse after the occupation and that even after the area was liberated in 2017, Christians "still suffer" segregation and persecution, and those who were displaced "have nothing to return to." R. at 90. The witnesses' reports also discussed anti-American sentiment in Iraq and the detention and mistreatment of people suspected of supporting ISIS. The letters of family support said Petitioner was at risk of harm by ISIS, which was responsible for killing his father sometime before the family left Iraq in 2005.

The Board held the evidence did not support excusing the time and numeric limitations because it did not "establish changed country conditions in Iraq material to [his] eligibility for CAT protection." R. at 4. In so holding, the Board compared Petitioner's new evidence with the evidence he presented in 2017 and found his new

evidence did not show that being either Christian or Americanized made him more vulnerable to persecution or torture in 2021 than in 2017.  With respect to the degree of change in country conditions, the Board explained that the evidence established "that violence against Christians in Iraq has existed since 2014" and "reflects . . . a continuance of the ongoing circumstances that gave rise to [Petitioner's] first motion to reopen," not a dramatic change.  R. at 5.  Likewise, the Board found the evidence showed nothing "more than an incremental difference from October 2016 with respect to Iraqi views of those with United States or Western affiliations."  *Id.*  With respect to the materiality of the alleged change in country conditions, the Board held the evidence showed ongoing discrimination against Christians, but nothing rising to the level of torture, noting, for example, that the government's failure to return misappropriated property does not constitute torture.  And it found the evidence did not show a correlation between anti-American sentiment and the likelihood of torture for having tattoos and other signs of Americanization.

The Board also denied the motion on the ground that Petitioner failed to make a prima facie showing that he is eligible for CAT protection.  The Board explained that while his evidence showed that "Christians remain at high risk of persecution in Iraq," it did "not reflect a reasonable likelihood that [he] can show that anyone would specifically intend to inflict severe pain or suffering on him" based on his Christianity or Americanization.  R. at 5.  With respect to his fear of being tortured because of his drug conviction or based on suspicion that he is an ISIS sympathizer, the Board similarly held that while the evidence "indicates that detainees in Iraq

suffer human rights abuses and may be tortured, [Petitioner] has not established a reasonable likelihood that he would be detained upon removal to Iraq and tortured by or with the acquiescence of a public official" there.  R. at 6.  The Board thus concluded that he did not meet "his heavy burden to show that the evidence submitted with the instant motion would likely change the outcome of his case."  *Id.* (internal quotation marks omitted).

### B.  Analysis of Petitioner's Claims

### 1.  Changed Country Conditions

Petitioner claims the Board failed to properly consider his evidence and erred in concluding that the evidence did not show a material change in country conditions in Iraq that warranted excusing him from the filing deadline.  The record belies the first claim, and we find no abuse of discretion in the Board's ruling.

We reject his contention that the Board "did not compare the evidence of country conditions submitted with his last motion to those that existed at the time of his hearing and with his first motion."  Aplt. Br. at 6.  The Board "abuses its discretion when it fails to assess and consider a petitioner's evidence that the persecution of others in his protected category has substantially worsened since the initial application."  *Qiu*, 870 F.3d at 1204-05.  Ordinarily, the Board compares country-conditions evidence presented with a motion to reopen to evidence presented at the time of the merits hearing.  *See In re S-Y-G-*, 24 I. & N. Dec. at 253.  Here, however, despite the IJ's offer to continue the 2016 hearing so Petitioner could gather evidence to support a CAT claim, he declined the offer and did not present any

9

country-conditions evidence. Accordingly, he cannot complain now that the Board did not compare his current evidence to evidence available at the time of the hearing.

And contrary to his assertion, the Board did compare his current evidence to the evidence he presented with his 2017 motion. The Board identified and addressed the key exhibits supporting the 2021 motion, discussed some of it in depth, and explained why it did not show a material worsening in conditions since 2017. Petitioner's disagreement with that conclusion does not mean the Board failed to consider his evidence. Neither does the fact that the Board did not explicitly discuss every aspect of his evidence. *See Hadjimehdigholi v. INS*, 49 F.3d 642, 648 n.2 (10th Cir. 1995) ("[T]he BIA is not required to discuss every piece of evidence when it renders a decision. . . . [A]ll that is necessary is a decision that sets out terms sufficient to enable us as a reviewing court to see that the Board has heard, considered, and decided." (internal quotation marks omitted)).

Petitioner's disagreement with the Board's ruling also does not establish that the Board abused its discretion. He insists that conditions in Iraq are worse now for Christians and Americanized Iraqis than they were at the time of the hearing in 2016 and when he first applied for reopening in 2017, and he points to evidence describing mistreatment of both groups since then. But evidence that Christian and Americanized Iraqis continue to be mistreated does not establish that their plight is significantly worse now than during the ISIS occupation. The Board gave a rational explanation for its ruling and substantial evidence supports its finding that the evidence did not show the kind of change needed to excuse the deadline for seeking

reopening.  Petitioner's argument ultimately amounts to a request to reweigh the evidence, which we cannot do.  *See Yuk v. Ashcroft*, 355 F.3d 1222, 1236 (10th Cir. 2004) ("[I]t is not our prerogative to reweigh the evidence.").  Accordingly, we find no abuse of discretion in its denial of the motion as time barred.[4]

### 2.  Eligibility for CAT Protection

The Board also acted within its discretion in concluding that the same evidence did not show a prima facie case of eligibility for CAT protection.  It found the evidence established that "Christians remain at high risk of persecution in Iraq" and there is still significant anti-American sentiment there, but did now show that Petitioner was likely to be tortured if returned to Iraq based on his Christianity, Americanization, or for any other reason.  R. at 5.  Because it found he did not demonstrate that he is personally at risk of torture, the Board held that he failed to make a prima facie case of his eligibility for relief under the CAT.  *See In re J-E-*, 23 I. & N. Dec. at 303.  Again, substantial evidence supports the Board's finding, and it gave a reasonable explanation for its ruling.

### 3.  Due Process Claim

In both the statement of the issues presented and summary of argument sections of his appellate brief, Petitioner suggested he intended to argue that the IJ violated his right to due process by "proceeding with [the] hearing, knowing that [he]

---

[4] Because we find no abuse of discretion in the Board's conclusion that the exception to the time limit did not apply, we need not decide whether the regulatory exception could have applied to the numeric limitation.  *See Wei*, 545 F.3d at 1254 n.2.

was afraid to return to Iraq and believed that he would not be returned to Iraq." Aplt. Br. at 2; *see also id.* at 6 ("The IJ erred in ordering the Petitioner deported when [he] had expressed his fear of torture by government officials or those acting on their behalf. . . . . Based on what had previously taken place, the [Board] should have granted [his] motion to reopen and allowed him to apply for CAT."). But he did not pursue the due process issue in the substance of his brief and cited no legal authority to support it. He thus waived the argument, and we do not address it. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief."); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived."). And, having concluded that he waived the argument, we need not address the government's exhaustion arguments.

## IV.    Conclusion

The petition for review is denied.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

12