[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 24, 2009
THOMAS K. KAHN
CLERK

No. 08-12211
Non-Argument Calendar
_____

Agency No. A70-577-253

ZHEN HE CHENG,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(April 24, 2009)

Before CARNES, WILSON and FAY, Circuit Judges.

PER CURIAM:

Zhen He Cheng, a native and citizen of Fujian Province in the People's

Republic of China, appeals the order of the Board of Immigration Appeals ("BIA")

affirming without opinion the immigration judge's ("IJ") order of removal and

denial of asylum and withholding of removal under the Immigration and

Nationality Act ("INA"), pursuant to INA §§ 208 and 241 and 8 U.S.C. §§ 1158

and 1231.  Cheng argues that he has a well-founded fear of being forcibly sterilized

or fined under China's one-child policy because, since moving to the United States,

he has been married and he and his wife have had two children.  Cheng notes that

the IJ denied him relief based on an adverse credibility finding, but asserts that his

credibility is irrelevant, as it remains objectively verifiable that he has two children

and that the Chinese government forcibly sterilizes or fines people with two

children.[1]  For the reasons set forth below, we deny the petition.

## I.

On November 15, 1990, Cheng arrived in the United States and was paroled

because he lacked a valid entry document.  On November 9, 2004, the Department

---

[1] As an initial matter, Cheng has abandoned several arguments on appeal.  First, in the order being appealed, the BIA also denied relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), pursuant to 8 C.F.R. § 208.16(c), and denied Cheng's motion for reconsideration of a previously denied application for cancellation of removal.  Cheng does not argue on appeal that denying either one was error, such that he has abandoned these issues and we will not address them.  See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1282 n.2 (11th Cir. 2005) (explaining that "[w]hen an appellant fails to offer argument on an issue, that issue is abandoned").  Likewise, Cheng does not argue on appeal that he suffered past persecution, such that he has abandoned the matter and we will not address it.  See id.

of Homeland Security issued a Notice to Appear charging that Cheng's parole status had expired and he was removable as an alien who lacked a valid entry document, pursuant to INA § 212(a)(7)(A)(i)(I). Cheng filed applications for asylum and cancellation of removal. An IJ granted Cheng's application for cancellation of removal and, therefore, declined to address his application for asylum. The DHS appealed, and the BIA sustained the DHS's appeal and ordered Cheng removed to China. Cheng submitted a motion to reopen and/or reconsider, and the BIA denied the motion to reconsider, but granted the motion to reopen so that Cheng could apply for asylum and withholding of removal.

On September 1, 2005, Cheng submitted an application for asylum and withholding of removal, on the ground that he would be forcibly sterilized or fined under China's one-child policy. The IJ denied the application, reasoning in part that Cheng was not credible, as he had given unbelievable testimony claiming that his wife had suffered a previous abortion in China and as the evidence was conflicting as to whether he actually remained married to his wife. Cheng appealed, arguing that his credibility was irrelevant, as it remained objectively verifiable that he had two children and that the Chinese government forcibly sterilized or fined people with two children. The BIA dismissed the appeal. The BIA reasoned that it must affirm the IJ's adverse credibility finding, as Cheng had not challenged its substance. The BIA also reasoned that, even assuming that he

3

were credible, Cheng's claim was not objectively verifiable.

## II.

When the BIA affirms the IJ's decision, but issues a separate opinion, as here, we review the BIA's opinion "except to the extent that [the BIA] expressly adopts the IJ's opinion." Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1242 (11th Cir. 2004). In conducting this review, we review legal determinations de novo and factual determinations under the "substantial evidence test." See D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004); Al Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001). Under this test, which is "highly deferential," we "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1283-84 (quotation omitted).

An alien who arrives in or is present in the United States may apply for, inter alia, asylum and withholding of removal. INA §§ 208(a)(1), 241, 8 U.S.C. §§ 1158(a)(1), 1231(b)(3)(A), 8 C.F.R. § 208.16(c). To qualify for asylum, the alien must prove that he is a refugee. Al Najjar, 257 F.3d at 1284 (citing 8 U.S.C. § 1101(a)(42)(A)). A refugee is defined in the INA as:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or

4

political opinion.

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). To establish refugee status, the alien must establish, through specific, detailed facts, (1) his past persecution on account of a protected ground, or (2) his "well-founded fear" that he will be persecuted in the future because of a protected ground. 8 C.F.R. § 208.13(a), (b); see Al Najjar, 257 F.3d at 1287.

A well-founded fear of future persecution may be established by showing (1) past persecution that creates a rebuttable presumption of a well-founded fear of future persecution based on a protected ground, (2) a reasonable possibility of personal persecution based on a protected ground, or (3) a pattern or practice in the subject country of persecuting members of a statutorily defined group of which the alien is a part. 8 C.F.R § 208.13(b)(1), (b)(2)(i) and (iii). In establishing the possibility of personal persecution, the alien must present "specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution." Huang v. U.S. Att'y Gen., 429 F.3d 1002, 1009 (11th Cir. 2005) (quotation omitted). In establishing a pattern or practice of persecution, the alien need not prove that he would be singled out for persecution if he demonstrates (1) a pattern or practice of persecution of similarly situated individuals and (2) that his inclusion in that group of individuals makes his fear of persecution reasonable. See 8 C.F.R. § 208.13(b)(2)(iii).

5

The INA does not expressly define "persecution" for purposes of qualifying as a "refugee." See INA § 101(a)(42); 8 U.S.C. § 1101(a)(42). It does, however, provide that:

> For purposes of determinations under this chapter, a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

INA § 101(a)(42)(B); 8 U.S.C. § 1101(a)(42)(B).

To qualify for withholding of removal, the alien similarly must show that it is more likely than not that his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. Mendoza, 327 F.3d at 1287 (citing 8 U.S.C. § 1231(b)(3)(A)). Because, however, the more-likely-than-not standard that applies to withholding of removal claims is more stringent than the well-founded-fear standard that applies to asylum claims, ineligibility for asylum generally precludes withholding of removal eligibility. Al Najjar, 257 F.3d at 1292-93.

## III.

We never have directly addressed Cheng's argument that his credibility was

6

irrelevant. Although we have recognized that an adverse credibility finding may be based on inconsistencies or omissions that do not go to "the heart of the claim," we never have addressed the distinct scenario of a petitioner's credibility having no bearing on an objectively verifiable fact such as the birth of two children to a Chinese national. See Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1233 (11th Cir. 2006). However, we need not address this argument now, as, even assuming he were credible, Cheng has not raised an issue meriting relief.

With regard to the merits of Cheng's asylum claim, the record does not include specific, detailed facts demonstrating that Cheng would be "singled out" for sterilization or economic sanctions. See Huang, 429 F.3d at 1009. Cheng did submit evidence that the Chinese government theoretically could sterilize or fine him, namely, (1) an excerpt from the Changle City Family-Planning Information Handbook, indicating that insertion of an IUD was mandatory upon the birth of a first child and sterilization was mandatory upon the birth of a second child, and that any birth without prior authorization was subject to a fine; and (2) the U.S. Department of State 2005 China Profile of Asylum Claims and Country Conditions, indicating that couples having an unauthorized child had to pay a "premium" and faced loss of their government-subsidized health benefits, job loss or demotion, loss of promotion opportunities for one or more years, expulsion from the Communist Party (membership in which was required for certain jobs), and/or

7

loss of government-subsidized education opportunities for their unauthorized children. Cheng did not, however, submit any evidence that the government had reason to or intended to apply these rules specifically to him. See id.

Also, the record does not demonstrate that the Chinese government has a pattern or practice of sterilizing or fining those similarly situated to Cheng. See 8 C.F.R. § 208.13(b)(2)(iii). Chang did submit evidence that the Chinese government counts foreign-born children toward its one-child policy, namely, (1) the 2005 China Profile, indicating that foreign-born children "count;" and (2) an opinion by the Changle City Family-Planning Administration, considering a situation in which a Chinese couple returned to China with two U.S.-born children, indicating that the newborn counted as a Chinese national and that the couple's reproductive behavior in the United States was subject to enforcement pursuant to the Fujian Province Family-Planning Regulations, and instructing that the government entity that employed one of the people should impose "sanctions." Cheng did not, however, submit evidence that the Chinese government forcibly sterilizes or fines people that are not government employees that return to China with two foreign-born children. See id.; see also In re J-W-S-, 24 I.&N. Dec. 185 (BIA 2007), pet. denied sub nom. Shao v. Mukasey, 546 F.3d 138 (2nd Cir. 2008) (addressing the subject more extensively). Indeed, according to the U.S. Department of State 2005 China Profile of Asylum Claims and Country

8

Conditions, diplomats know of no cases of such persecution. Accordingly, Cheng failed to establish a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1), (b)(2)(i) and (iii).[2]

On appeal, Cheng points out that China's family-planning policy is national, such that he could not relocate to another part of the country. Pursuant to 8 C.F.R. § 208.13(b)(2)(ii), an alien does not have a well-founded fear of persecution "if [he] could avoid persecution by relocating to another part of [his] country of nationality . . . , if under all the circumstances it would be reasonable to expect the applicant to do so." The alien bears the burden of establishing that it would not be reasonable for him to relocate, unless the persecution is by a government or is government-sponsored. 8 C.F.R. § 208.13(b)(3)(i). Since Cheng failed to prove a well-founded fear of future persecution, we need not address this argument. See 8 C.F.R. § 208.13(b)(2)(ii). We note, though, that Cheng may not have even been

---

[2] On appeal, Cheng argues that the IJ and BIA committed reversible error by failing to address the excerpt from the Changle City Family-Planning Information Handbook, the opinion by the Changle City Family-Planning Administration, and a related document. Cheng cites to Shou Yung Guo v. Gonzales, 463 F.3d 109 (2d Cir. 2006), in which the Second Circuit held that the BIA abused its discretion in denying an alien's motion to reopen based on changed country circumstances because it failed to consider these same documents, which arguably demonstrated that Fujian Province authorities had decided to count foreign-born children in determining family-planning policy violations and to sterilize the parents of two children regardless of place of birth. Cheng's argument is without merit, as both the IJ and BIA expressly addressed and considered these documents. Moreover, the BIA concluded that it previously had found, in Matter of S-Y-G-, 24 I.&N. Dec. 247 (BIA 2007), pet. denied sub nom. Shao v. Mukasey, 546 F.3d 138 (2nd Cir. 2008), that these documents did not establish prima facie eligibility for asylum, as they did not demonstrate that Chinese nationals returning to China after the birth of a second child in the United States were sterilized or faced economic sanctions that amounted to persecution.

9

subject to the burden of proving that he could not relocate, as the alleged persecution would be at the hands of the Chinese government.  See 8 C.F.R. § 208.13(b)(3)(i).

With regard to the merits of Cheng's withholding-of-removal claim, because Cheng failed to satisfy his burden for proving asylum eligibility, he necessarily failed to meet his more-stringent burden for proving withholding-of-removal eligibility.  See Al Najjar, 257 F.3d at 1292-93.  Accordingly, we deny petition.

**DENIED.**