[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————————

No. 19-14316

———————————————

SEAN ANTHONY BLAKE,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

———————————————

Petition for Review of a Decision of the
Board of Immigration Appeals

———————————————

(December 23, 2019)

Before WILLIAM PRYOR, MARTIN, and BRANCH, Circuit Judges.

WILLIAM PRYOR, Circuit Judge:

This application requires us to decide whether Sean Anthony Blake, a

Jamaican citizen and convicted drug trafficker who has illegally entered the United

States three times, is entitled to an emergency stay of removal. We conclude that

he is not and deny his motion to stay removal. Although Blake has presented

evidence that he faces a risk of grave harm if he is removed to Jamaica, more is

required to prevail on this motion. He must establish a strong showing that he was likely to succeed in proving that the Board erred when it concluded he was not entitled to file an untimely motion to reopen. Because he has not done so, he is not entitled to relief on this motion. We will, however, grant Blake's motions to seal his records before this Court, and we will carry his motions for judicial notice with the case.

## I. BACKGROUND

The United States deported Blake twice, in 2005 and 2008, after he entered the country illegally. When Blake illegally entered the United States for a third time in May 2009, the Department of Homeland Security charged him as removable as an alien who falsely represented himself as a United States citizen, 8 U.S.C. § 1182(a)(6)(C)(ii)(I), who was not in possession of a valid travel document at the time of entry, id. § 1182(a)(7)(A)(i)(I), and who had previously been ordered removed after being convicted of an aggravated felony, id. § 1181(a)(9)(A)(i). In June 2009, an immigration judge ordered Blake removed.

But the government delayed deporting Blake. In a separate criminal proceeding, Blake pleaded guilty to drug-trafficking charges and became a cooperating witness in the prosecution of Christopher Coke, a gang leader in Jamaica. In exchange for testifying against Coke, Blake received a sentencing reduction. The government also deferred his removal. But in January 2019, the

2

Department placed him in the custody of immigration officials to execute the 2009 removal order.

Blake responded with a motion to reopen his immigration proceedings. He alleged that his motion, although untimely, was exempt from the time limitation based on a change in country conditions in Jamaica and that he was entitled to relief under the United Nations Convention Against Torture. The immigration judge denied Blake's motion, and the Board of Immigration Appeals affirmed. The Board found that Blake had established only a change in his personal circumstances, not a change in country conditions in Jamaica, which was insufficient to exempt him from the deadline to file a motion to reopen. The Board also found that Blake had failed to prove a prima facie case of eligibility for deferral of removal under the Convention because he did not submit sufficient evidence that he would more likely than not be tortured by, or with the acquiescence of, the Jamaican government.

Blake petitioned this Court for review. He moved to stay his removal pending disposition of his petition, to seal several records, and for this Court to take judicial notice of new records. Although the government did not oppose Blake's motions to seal, it filed a response in opposition to his motions for a stay and for judicial notice.

3

## II. STANDARD OF REVIEW

When determining whether to grant a stay of removal, we consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citation and internal quotation marks omitted). The failure to establish a strong likelihood of success on the merits is fatal to a motion to stay removal. *See id.* at 435 (stating that courts should consider the second two factors only after "an applicant satisfies the first two factors").

## III. DISCUSSION

We can start, and end, with whether Blake has made a strong showing that he is likely to succeed on the merits. To prevail, Blake must meet the "heavy burden" that comes with a motion to reopen the case. *Zhang v. U.S. Att'y Gen.*, 572 F.3d 1316, 1319 (11th Cir. 2009). After the Board orders an alien removed, an alien must file a motion to reopen "within 90 days of the date of entry of a final administrative order." 8 U.S.C. § 1229a(c)(7)(C)(i). But this deadline does not apply if "(1) an alien files a motion to reopen that seeks . . . relief under the Convention Against Torture; (2) the motion is predicated on changed country conditions; and (3) the changed conditions are material and could not have been

4

discovered at the time of the removal proceedings." *Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252, 1256 (11th Cir. 2009) (citing 8 C.F.R. § 1003.23(b)(4)(i)). Here, the evidence of changed conditions must be material to Blake's eligibility for relief under the Convention Against Torture. To receive relief under the Convention, Blake must "establish that it is more likely than not that he . . . would be tortured if removed to the proposed country of removal," 8 C.F.R. § 208.16(c)(2), "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity," *id.* § 208.18(a)(1). So to sum up these standards, Blake's must make a prima facie case that it was more likely than not he would be tortured by or with the consent or acquiescence of Jamaican officials on returning to his home country due to changes in country circumstances since his removal proceedings.

Blake offers three arguments why the Board likely erred when it concluded that he could not meet this burden. He first asserts that the Board committed legal error by failing to give reasoned consideration to his application. *See Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1302 (11th Cir. 2015) ("Occasionally this court has granted petitions for review, vacated agency decisions, and remanded for further proceedings when the agency's decision was so lacking in reasoned consideration and explanation that meaningful review was impossible."). Next, he argues that the Board's decision itself was erroneous. And finally, he accuses the

5

Board of committing a pair of isolated legal errors—namely, applying the wrong legal standard and engaging in unlicensed factfinding. None of his arguments are likely to succeed.

First, the Board's decision makes clear that it likely gave reasoned consideration to Blake's arguments. In his brief to the Board, Blake argued that "the reaction and sustaining environment in Jamaica" to Coke's arrest and extradition created violent conditions. As support, he offered evidence of armed riots immediately following Coke's extradition in 2009 and of violent retaliation against his family members that occurred shortly after his testimony against Coke in 2012. In Blake's telling, the Board failed to consider this evidence. But one of the Board's reasons for denying the motion was that Blake did not provide "evidence that indicate[s] that country conditions in Jamaica are significantly different today in 2019 as a result of the extradition and conviction of Christopher Coke almost a decade ago or any other reason." This statement identifies the flaw in Blake's evidence: it all came from the discrete periods of time that surrounded Coke's extradition and conviction "almost a decade ago," which does not support the inference that "country conditions in Jamaica are significantly different *today in 2019*." This explanation is reasoned consideration. *See Cole v. U.S. Att'y Gen.*, 712 F.3d 517, 534 (11th Cir. 2013) ("[The Board] need only consider the issues raised and announce their decision in terms sufficient to enable a reviewing court

6

to perceive that [it has] heard and thought and not merely reacted." (citation and internal quotation marks omitted)).

The Board's decision was also likely not erroneous, which we review under the deferential arbitrary and capricious standard. *See Flores-Panameno v. U.S. Att'y Gen.*, 913 F.3d 1036, 1040 (11th Cir. 2019). As noted, the Board identified a substantial hole in Blake's evidence—that it was dated and did not reveal anything about contemporary conditions in Jamaica. And even setting that issue aside, Blake has not established a prima facie case that his risk of harm was materially affected by changed country conditions in Jamaica, as opposed to changed personal circumstances. Blake's own evidence to the Board showed that Coke had been a powerful gang kingpin in Jamaica since at least the 1990s, long before Blake's removal proceedings. It is certainly reasonable to assume that Coke and his purportedly vast network in Jamaica were hostile to police informants before Coke's arrest and trial. So the Board did not act arbitrarily or capriciously when it concluded that the real change that Blake's evidence supported was of personal circumstances—Blake was at risk because he testified, not because Jamaica became more hostile to informants between 2009 and 2019.

Finally, Blake's two purported legal errors in the Board's decision will not likely grant him relief. First, the Board identified the correct legal standard for reviewing a motion to reopen when it concluded that Blake had "not demonstrated

7

prima facie eligibility for deferral of removal under the Convention Against Torture." And second, whether Blake played a "limited role" in Coke's prosecution, as the Board found, is irrelevant to whether country conditions in Jamaica have changed. *See Zhang*, 572 F.3d at 1319 ("An alien cannot circumvent the requirement of changed country conditions by demonstrating only a change in her personal circumstances.").

We are also not persuaded by the dissent's analogies of Blake's situation to our decisions in *Jiang* and *Zhang*. In both of those cases, the petitioners argued that an increased practice of forced sterilization in a particular province to enforce China's one-child policy constituted changed country conditions. *See Jiang*, 568 F.3d at 1258; *Zhang*, 572 F.3d at 1319. The petitioners offered country reports, contemporary evidence from residents in their villages, a congressional report of the change in Chinese policy, and other evidence that there was increased enforcement of sterilization when they filed their motions to reopen. *See Jiang*, 568 F.3d at 1257; *Zhang*, 572 F.3d at 1319–20. And in both cases, the Board "ignored," "overlooked, or inexplicably discounted" this evidence, which strongly supported a change in country circumstances. *Zhang*, 572 F.3d at 1320; *accord Jiang*, 568 F.3d at 1258 (holding that the Board had "badly misconceived" the asserted changed country circumstances). In contrast, here the Board did not "ignore," "overlook[], or inexplicably discount[]" any evidence that Blake

8

presented, including the evidence that related to retaliation against him and his family members. The Board instead reasonably found that Blake's decade-old evidence of discrete, violent responses did not prove a change in conditions in Jamaica in 2019.

Blake also filed motions for us to seal his submissions to this Court and to take judicial notice of several documents. Although we will grant his motions to seal, we are skeptical that Blake's motions for judicial notice are warranted. "[T]he general rule . . . is that the court may not go outside the administrative record." *Najjar v. Ashcroft*, 257 F.3d 1262, 1278 (11th Cir. 2001) (citations and internal quotation marks omitted). That said, the merits panel will be in a better position to determine whether to grant these motions, so we will carry them with the case.

## IV. CONCLUSION

Blake's motion to stay removal is **DENIED**. Blake's motions for judicial notice are **CARRIED WITH THE CASE**. Blake's motions to seal are **GRANTED**. We **DIRECT** the Clerk to seal Blake's motion to stay removal, his motions to take judicial notice, and his motions to seal, along with the accompanying exhibits. We also **DIRECT** the Clerk to treat any motion for reconsideration as a non-emergency matter.

9

MARTIN, Circuit Judge, dissenting:

Sean Anthony Blake seeks an emergency stay of removal pending the resolution of his Petition for Review. My review persuades me that Mr. Blake has demonstrated a strong likelihood of success on the merits of his appeal. See Nken v. Holder, 556 U.S. 418, 434, 129 S. Ct. 1749, 1761 (2009). He has also shown that he will be irreparably injured absent a stay, having introduced extensive and persuasive record evidence that if he is deported to Jamaica he is at serious risk of being be murdered by members of a powerful gang. See id. I would therefore grant Mr. Blake's emergency motion for a stay of removal pending this Court's consideration of his appeal.

## I.

Mr. Blake is a Jamaican citizen and national who was first removed from the United States in June 2005. He reentered the United States in May 2009 and was ordered removed in June 2009. He waived appeal of his removal order. He was then placed in deferred action status, which lasted until approximately January 15, 2019, when he was taken into custody by the Department of Homeland Security ("DHS").

On February 19, 2019, Mr. Blake moved to reopen removal proceedings, arguing that conditions in Jamaica had changed, making him eligible for deferral of removal under the Convention Against Torture ("CAT"). Mr. Blake claimed he

was afraid of persecution at the hands of followers of Christopher Coke, the notorious leader of the Jamaican gang the "Shower Posse"; Jamaican police; supporters of the former prime minister of Jamaica, Bruce Golding; and supporters of the Jamaican Labour Party. In support of his motion, Mr. Blake submitted extensive evidence showing that beginning in 2010—after his June 2009 order of removal—he and his family had been targeted for violence by Mr. Coke and his followers. This included evidence that a member of Mr. Coke's family told Mr. Blake that he was "going to die." Since that threat, six of Mr. Blake's cousins were murdered, his sister's house in Jamaica was burned down, his girlfriend was threatened and her house in Jamaica bombed, and his father was forced to flee Jamaica.

Mr. Blake also submitted evidence supporting his claim that Mr. Coke, who was extradited to the United States in 2010, remains powerful in Jamaica despite his conviction and continued incarceration. This evidence includes news reports and a court filing in which the government took the position that Mr. Coke remains dangerous even after his extradition to the United States. It also includes the February 13, 2019 declaration of Antoinette Ophiela Myers—Mr. Blake's girlfriend—in which she states that Mr. Coke's gang is now run by his son, that it is still "going strong" after Mr. Coke's incarceration, and that its members "still deal death to any who oppose it" with "immunity from the government [of

11

Jamaica]" and the cooperation of police, the military, and politicians. According to her declaration, as of February 2019 members of the Shower Posse "still want [Mr. Blake] dead and will stop at nothing to get him."

The Immigration Judge ("IJ") denied Mr. Blake's motion to reopen and the Board of Immigration Appeals ("BIA") affirmed. The BIA held that Mr. Blake failed to "demonstrate[] changed country conditions or submit[] new evidence that would likely affect the outcome of his case" and that "at most" the evidence "only demonstrates . . . a change in [Blake's] own personal circumstances and not a change in country conditions in Jamaica." It also held that Mr. Blake had "not submitted sufficient evidence that it is more likely than not that he would be tortured by or with the consent or acquiescence of a public official or other person acting in an official capacity upon his return to Jamaica."

Mr. Blake timely appealed and filed an emergency petition for a stay of removal on November 12, 2019.

## II.

In deciding whether to grant a stay of removal pending appeal, we consider: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties

12

interested in the proceeding; and (4) where the public interest lies. Nken, 556 U.S. at 434, 129 S. Ct. at 1761.

A respondent seeking reopening of proceedings must establish the existence of new or previously available material evidence which would likely affect the outcome of his case. 8 C.F.R. § 1003.23(b)(3); Matter of Coelho, 20 I. & N. Dec. 464, 472 (BIA 1992). Generally, motions to reopen must be filed no later than 90 days after a final administrative order. 8 U.S.C. § 1229a(c)(7)(C)(i). But a noncitizen seeking asylum, withholding of removal, or relief under CAT may move to reopen proceedings after this time if his motion is predicated on changed country conditions which are material and could not have been discovered at the time of removal proceedings. Jiang v. U.S. Att'y Gen., 568 F.3d 1252, 1256 (11th Cir. 2009); see 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.23(b)(4)(i). The petitioner need only show that the new facts, coupled with facts already in the record, make a prima facie case for the relief sought, thereby satisfying the Board "that it would be worthwhile to develop the issues further at a plenary hearing on reopening." In re L-O-G-, 21 I. & N. Dec. 413, 419 (BIA 1996) (quotation marks omitted).

Changed personal circumstances, taken alone, do not meet the standard for a motion to reopen: a petitioner must show "changed country conditions arising in the country of nationality." 8 C.F.R. § 1003.23(b)(4)(i); Jiang, 568 F.3d at 1255–

13

57. But this does not preclude any consideration of changes in personal circumstances. The rule in our Circuit is that changed personal circumstances may be relevant to our consideration of whether changed country conditions make a petitioner prima facie eligible for relief. See Jiang, 568 F.3d at 1257–58; see also Zhang v. U.S. Att'y Gen., 572 F.3d 1316, 1320 (11th Cir. 2009) (per curiam). In both Jiang and Zhang, the petitioner offered contemporary evidence of increased enforcement of China's sterilization policy accompanied by evidence that she had given birth to more than one child while living in the United States. See id. The fact that the petitioner had given birth to children while living in the United States—her changed personal condition—made the increased enforcement of China's one-child policy—the changed country condition—relevant to her, because it made it likely that made it likely that she would be subjected to China's forced sterilization policy. Jiang, 568 F.3d at 1254–56; Zhang, 572 F.3d at 1318. Considered separately, neither would have been sufficient to warrant reopening. But taken together, these changed personal and country conditions established a prima facie case for asylum and withholding of removal.

### III.

Under this Court's precedent it was error for the BIA and IJ to disregard Mr. Blake's evidence on the ground that it showed only changed personal circumstances. Mr. Blake's case is similar to Zhang and Jiang. While some of the

14

evidence he submitted to the IJ relates to his changed personal circumstances, much of it relates to developments in his home country that make it significantly more likely he will be tortured or killed upon his return. The evidence that many of Mr. Blake's relatives have been murdered, his sister's house burned down, and his girlfriend's house bombed show materially changed conditions in his home country which strongly suggests that members of Mr. Coke's gang are seeking retribution against Mr. Blake and are likely to harm him upon his return to Jamaica. Specifically, it tends to show that since Mr. Blake's 2009 removal order a powerful and violent gang in Jamaica began to target Mr. Blake and his family and continues to do so to this day. While most of the overt acts of violence occurred several years ago, there is evidence that as of February 13, 2019—six days before the IJ's denial of Mr. Blake's motion—Mr. Coke's followers remain powerful, operate with immunity from government interference, and want Mr. Blake dead. The gang may be no more powerful today than it was in 2009. But since 2009, it has begun to target Mr. Blake and has used its far reaching power to bring harm to his family members. Nothing in the text of 8 C.F.R. § 1003.23(b)(4)(i) precludes consideration of this evidence.

I also believe Mr. Blake is likely to prevail on his claim that the BIA committed legal error by failing to give reasoned consideration to evidence sufficient to make out a prima facie case of CAT eligibility. See Zhang, 572 F.3d

15

at 1320; Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1377 (11th Cir. 2006) (error for IJ to fail to give "reasoned decision" in light of credible testimony and other evidence establishing eligibility for CAT relief). This record contains credible evidence that, upon return to Jamaica, Mr. Blake is likely to be seriously harmed with the consent or acquiescence of government officials. At a minimum, I think this was sufficient to make out a prima facie case for CAT relief. See Li v. U.S. Att'y Gen., 488 F.3d 1371, 1375 (11th Cir. 2007) (per curiam) (petitioner who established prima facie case of eligibility for substantive relief sought warranted reopening); Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1241 (11th Cir. 2004) (CAT relief requires showing that it is more likely than not that petitioner would be tortured with the consent or acquiescence of a government official if removed to proposed country of removal). The BIA, apparently, did not think it enough. But because the BIA failed to include any explanation for disregarding the evidence before it, we have no way of knowing how it reached its decision.

First, the BIA held that Mr. Blake failed to cite any evidence that country conditions in Jamaica remain dangerous in 2019. But it completely disregarded the portions of Mr. Blake's and Ms. Myers's declarations which state that Mr. Coke's organization remains strong in 2019 and that its members still want Mr. Blake dead. It thereby "overlooked, or inexplicably discounted," evidence which would corroborate Mr. Blake's claim. Zhang, 572 F.3d at 1320. If the Board had a

16

reason for disregarding these declarations, we have no way of knowing what it was, because the board did not share any such reason in its decision. When, as here, the Board "fail[s] to give reasoned consideration or make adequate findings, we remand for further proceedings because we are unable to review the decision." Ayala v. U.S. Att'y Gen., 605 F.3d 941, 948 (11th Cir. 2010) (quotation marks omitted).

Second, the BIA held that Mr. Blake failed to present evidence demonstrating that Jamaican government officials would consent or acquiesce to his torture. But Ms. Myers attested that "the police will not be able to protect [Mr. Blake] if he is forced to go back to Jamaica" because Mr. Coke's gang, which "could control any aspect of Jamaican life that it deemed necessary," has "the police in their pocket, and [Blake] is their number one target." And, in his own affidavit, Mr. Blake stated that Mr. Coke "has everyone on his payroll, including police, soldiers, doctors, pastors, and politicians" and, because Blake is one of Coke's targets, he "will be killed in Jamaica if [he] return[s]." These affidavits were supported by extensive documentary evidence, including multiple news articles and the government's own representations. Though the BIA referenced certain exhibits in Mr. Blake's motion, it gave no explanation for why they were insufficient. In this way, it discounted persuasive, relevant evidence without giving any reason for doing so. Merely citing to a list of exhibits, without any

17

discussion or even description of their contents, is not sufficient to enable us "to perceive that it has heard and thought and not merely reacted" and leaves us unable to effectively review the BIA's decision. Perez-Guerrero v. U.S. Att'y Gen., 717 F.3d 1224, 1232 (11th Cir. 2013) (per curiam) (alterations adopted) (quoting Cole v. U.S. Att'y Gen., 712 F.3d 517, 534 (11th Cir. 2013)). This is error and requires remand. Tan, 446 F.3d at 1377.

## IV.

Mr. Blake has also satisfied the other stay factors. This evidence leaves me no doubt that Mr. Blake will face irreparable injury if he is deported. See Nken, 556 U.S. at 434, 129 S. Ct. at 1761. And, while the public has an interest in "prompt execution of removal orders," it also has an "interest in preventing [petitioners] from being wrongfully removed, particularly to countries where they are likely to face substantial harm." Id. at 436, 129 S. Ct. at 1762. Staying Mr. Blake's removal will further this important interest.

Mr. Blake is not certain to prevail on the merits of his appeal. But given the strength of his arguments and the cursory treatment the BIA and IJ gave to his motion to reopen, I think he is likely do so. By permitting Mr. Blake's removal before this Court evaluates the merits of his case, we risk that he will come to grave harm before his claims can be considered. To do so is to forego our congressionally mandated role of overseeing an "important procedural safeguard

18

designed to ensure a proper and lawful disposition of immigration proceedings."

Kucana v. Holder, 558 U.S. 233, 250, 130 S. Ct. 827, 839 (2010) (quotation marks omitted and alterations adopted).

I dissent.