[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14752
Non-Argument Calendar
_____

Agency No. A078-994-383


FRANCISCO JAVIER GONZALEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Department of Homeland Security
_____

(January 27, 2021)

Before BRANCH, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Francisco Javier Gonzalez attempted to enter the United States in 2001 by

presenting a fraudulent visa at inspection at a Houston airport.  Shortly thereafter,

immigration officials served Gonzalez with an expedited order of removal and removed him to Mexico.  At some point, Gonzalez returned to the United States.  In 2019, the government reinstated the 2001 expedited order of removal.  In this petition for review, Gonzalez raises three challenges to the reinstatement order.  First, he argues that the 2001 expedited order of removal was invalid and, thus, unenforceable.  Second, he argues that the government arbitrarily violated the regulations governing reinstatement of removal.  And third, Gonzalez argues that those violations deprived him of his Fifth Amendment right to due process.  Because we lack jurisdiction to review the validity of the 2001 expedited order of removal, the government did not violate any regulations governing reinstatement, and the government did not violate Gonzalez's constitutional rights, we dismiss the petition in part and deny it in part.

## I.    BACKGROUND

Gonzalez is a native and citizen of Mexico.  In July 2000, Gonzalez lawfully entered the United States on a B2 visitors visa with authorization to stay until January 24, 2001.  He stayed several months beyond the authorized date, returning to Mexico in June 2001.  Thereafter, he unsuccessfully sought another legal visa to the United States.  When his requests were declined, he purchased a visa from a "man in Tijuana" for $1,500.

2

Gonzalez then flew to Houston, Texas.  Gonzalez presented his visa to immigration officials who noted that the visa appeared questionable and later determined it was fraudulent.  During a secondary inspection interview conducted in Spanish, Gonzalez claimed that he did not know the visa was fraudulent, but he admitted that the man who sold him the visa instructed Gonzalez "not to tell officials that [he] had bought it."  At the end of the inspection, immigration authorities served Gonzalez with a Form I-860 Notice and Order of Expedited Removal under 8 U.S.C. § 1225(b)(1).[1]  The Notice charged Gonzalez as subject to expedited removal because he sought admission to the United States with a fraudulent document under 8 U.S.C. § 1182(a)(6)(C)(i), and lacked a valid entry document under 8 U.S.C. § 1182(a)(7)(A)(i)(I).  Gonzalez was removed from the United States on December 15, 2001.

At some point, Gonzalez returned to the United States, married, and had children.  Gonzalez's spouse applied for a green card for Gonzalez, which was approved on January 23, 2009.  Gonzalez eventually applied for adjustment of

---

[1] Section 1225(b)(1)(A)(i) provides that:

> If an immigration officer determines that an alien . . . who is arriving in the United States . . . is inadmissible [because he presents a fraudulent entry document or he is not in possession of a valid entry document], the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution.

status to a legal permanent resident, but his application was denied on May 5, 2018 due to inadmissibility.[2]

The Department of Homeland Security ("DHS") requested that Gonzalez appear for reinstatement proceedings, which occurred on November 8, 2019. Gonzalez appeared with counsel. DHS served Gonzalez with notice of its intent to reinstate the 2001 expedited order of removal.[3] DHS charged that Gonzalez was subject to a prior order of removal and that he unlawfully reentered the United States on an unknown date. DHS officials provided Gonzalez an opportunity to respond to the notice, but Gonzalez invoked his right to remain silent and declined to answer any questions, including whether he feared persecution upon removal. After reviewing the evidence, DHS ordered reinstatement of the 2001 expedited order of removal. Gonzalez was released under an order of supervision pending his removal from the United States. Gonzalez timely petitioned for review of DHS's reinstatement order.

---

[2] "Any alien who . . . has been ordered removed under [an expedited order of removal], and who enters or attempts to reenter the United States without being admitted is inadmissible." 8 U.S.C. § 1182(a)(9)(C)(i)(II).

[3] DHS reinstated the 2001 expedited order of removal on two prior occasions. Both times, Gonzalez petitioned this court for review. We dismissed the first petition for lack of jurisdiction when DHS issued a superseding reinstatement order. We dismissed the second petition for lack of jurisdiction when DHS cancelled the superseding reinstatement order.

4

## II.    DISCUSSION

Gonzalez challenges DHS's reinstatement of his 2001 order of removal on three grounds.  First, Gonzalez argues that he suffered a "gross miscarriage of justice" when DHS reinstated his order of removal because the 2001 order of removal was invalid.  Second, he argues that DHS violated its own regulations in the process of reinstating the 2001 order of removal.  And third, Gonzalez argues that DHS violated his Fifth Amendment right to due process by arbitrarily disregarding those regulations governing the reinstatement process.  We lack jurisdiction to consider some of Gonzalez's arguments, and his remaining arguments are meritless.

We review our own subject matter jurisdiction *de novo*.  *Avila v. U.S. Att'y Gen.*, 560 F.3d 1281, 1283 (11th Cir. 2009).  Our jurisdiction is limited to final orders of removal.  8 U.S.C. § 1252(a)(l).  The reinstatement of an order of removal is a final order of removal under § 1252(a)(1) subject to judicial review.  *Avila*, 560 F.3d at 1284.  But we lack jurisdiction to review the underlying expedited order of removal that supported such reinstatement.  *See* 8 U.S.C. § 1252(a)(2)(A) and (e)[4]; *Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d

---

[4] 8 U.S.C. § 1252(a)(2)(A) provides that "[n]otwithstanding any other provision of law . . . , no court shall have jurisdiction to review-- (i) except as provided in subsection (e), any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an [expedited] order of removal."  In relevant part, 8 U.S.C. § 1252(e) permits "[j]udicial review of any determination" concerning an expedited order of removal "in habeas corpus proceedings[.]"  However, judicial review in habeas corpus

1133, 1139 (9th Cir. 2008) ("By the clear operation of these statutes, we are jurisdictionally barred from hearing . . . challenge[s] to . . . reinstatement of [an] expedited removal order."); *Lorenzo v. Mukasey*, 508 F.3d 1278, 1281 (10th Cir. 2007).

Notwithstanding that jurisdictional bar, we retain jurisdiction to review constitutional and legal challenges to an order of removal, 8 U.S.C. § 1252(a)(2)(D)[5]; *see also Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1272 (11th Cir. 2020) (en banc), which we review *de novo*, *Poveda v. U.S. Att'y Gen.*, 692 F.3d 1168, 1172 (11th Cir. 2012). Such challenges must be "colorable," which is to say that "a party may not dress up [an unreviewable] claim with legal or constitutional clothing to invoke our jurisdiction." *Patel*, 971 F.3d at 1272. And in reviewing constitutional and legal challenges to an order of removal, we generally "may not go outside the administrative record." *Blake v. U.S. Att'y Gen.*, 945 F.3d 1175, 1180 (11th Cir. 2019).

---

proceedings "shall be limited to determinations of-- (A) whether the petitioner is an alien, (B) whether the petitioner was ordered [expeditiously] removed . . . , and (C) whether the petitioner can prove by a preponderance of the evidence that" he is "an alien lawfully admitted for permanent residence, . . . as a refugee . . . , or has been granted asylum." *Id.* at § 1252(e).

[5] 8 U.S.C. § 1252(a)(2)(D) provides:

Nothing in [this section], or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

6

When, as happened here, an alien unlawfully returns to the United States after having been ordered removed, that alien's order of removal may be reinstated. *See* 8 U.S.C. § 1231(a)(5) ("If the Attorney General finds that an alien has reentered the United States illegally after having been removed . . . under an order of removal, the prior order of removal is reinstated from its original date and . . . the alien shall be removed under the prior order."). To determine whether an alien is subject to reinstatement, an immigration official must determine: (1) "[w]hether the alien has been subject to a prior order of removal[,]" (2) "[t]he identity of the alien, i.e., whether the alien is in fact an alien who was previously removed," and (3) "[w]hether the alien unlawfully reentered the United States." 8 C.F.R. § 241.8(a). If the "officer determines that [the] alien is subject to removal, he or she shall provide the alien with written notice of his or her determination," and "advise the alien that he or she may make a written or oral statement contesting the determination." *Id.* § 241.8(b). Furthermore, "[i]*f the alien wishes to make such a statement*, the officer shall allow the alien to do so and shall consider whether the alien's statement warrants reconsideration of the determination." *Id.* (emphasis added).

Provided the requirements of § 241.8(a) are satisfied, "the alien shall be removed under the previous order of exclusion, deportation, or removal" unless the alien expresses a fear of returning to the country of removal. *Id.* § 241.8(c) and

7

(e).  If the alien expresses such a fear, the alien shall be referred "for an interview to determine whether the alien has a reasonable fear of persecution or torture[.]" *Id.* § 241.8(e).

Aliens are entitled to due process under the Fifth Amendment in reinstatement proceedings.  *Avila v. U.S. Att'y Gen.*, 560 F.3d 1281, 1285–86 (11th Cir. 2009).  That protection "requires that aliens be given notice and an opportunity to be heard in their removal proceedings."  *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010).  "To establish a due process violation, the petitioner must show that she was deprived of liberty without due process of law and that the purported errors caused her substantial prejudice."  *Id.*  "To show substantial prejudice, an alien must demonstrate that, in the absence of the alleged violations, the outcome of the proceeding would have been different."  *Id.*

## A.     The Validity of Gonzalez's 2001 Order of Removal

Gonzalez contends that DHS's 2001 order of removal was invalid and unenforceable since he was not subject to expedited removal in 2001[6] and the

---

[6] In particular, Gonzalez concedes that an immigration officer may issue an expedited order of removal if an alien attempts to enter the United States without a valid entry document. Gonzalez nevertheless argues that DHS was required—but failed—to determine whether he was continuously present in the United States for at least two years before issuing the 2001 expedited order of removal.  *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(II) (allowing for the expedited removal of "an alien . . . who has not been admitted or paroled into the United States, and who has not affirmatively shown . . . that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility").

agency violated its own regulations when it issued that order.  Because this argument attacks the validity of the underlying 2001 expedited order of removal, we lack jurisdiction to consider it.  *See* 8 U.S.C. § 1252(a)(2)(A) and (e).[7]

### B.    DHS's Compliance with Regulations Governing Reinstatement

Next, Gonzalez argues that DHS violated the governing regulations when it reinstated the 2001 order of removal.   As an initial matter, Gonzalez's argument is meritless because DHS did not violate any regulations when it reinstated the 2001 expedited order of removal.  However, as we will discuss in the next section, even if DHS violated the governing regulations, Gonzalez would be entitled to relief only if he can show prejudice under a due process analysis.

First, Gonzalez argues that DHS denied him his right to counsel when it allegedly did not permit Gonzalez's attorney to be present with him during the reinstatement interview.  *See* 8 C.F.R. § 292.5(b) ("Whenever an examination is

---

[7] Gonzalez nevertheless maintains that we retain jurisdiction to review an underlying order of removal when a "petitioner can show that he has suffered a gross miscarriage of justice in the initial deportation proceeding," citing the Ninth Circuit's decision in *Vega-Anguiano v. Barr*, 982 F.3d 542, 544 (9th Cir. 2019) (citation and internal quotation marks omitted). Specifically, the Ninth Circuit has interpreted 8 U.S.C. § 1252(a)(2)(D), which preserves the court's jurisdiction to entertain constitutional and legal challenges to removal orders, to provide jurisdiction to review a prior removal order "if the petitioner can show that he has suffered a gross miscarriage of justice in the initial deportation proceeding." *Id.* We have never adopted this interpretation, and we decline to do so now.  Moreover, even under the Ninth Circuit's standard, this exception would be unavailable to Gonzalez because the "underlying removal order is an *expedited* removal order that is subject to additional jurisdictional bars—8 U.S.C. §§ 1252(a)(2)(A) and 1252(e)." *Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1138 (9th Cir. 2008).

provided for in this chapter, the person involved shall have the right to be represented by an attorney or representative.").  The government responds that § 292.5(b) does not apply to proceedings to reinstate an order of removal.  We need not decide that issue because there is no indication in the administrative record that Gonzalez was denied a right to counsel.  Indeed, the record shows that Gonzalez appeared with his attorney for the reinstatement proceedings, and when interviewed, was informed that he could consult with a lawyer or representative and that the lawyer could be present during questioning.  Gonzalez stated that he understood these rights, and then invoked his right to remain silent to all substantive questions and refused to sign the record of his sworn statement.  On this record, Gonzalez's argument related to his right to counsel is meritless.

Second, Gonzalez argues that DHS failed to interview him or inquire whether he feared returning to Mexico.  This argument is also belied by the record.  Immigration officials interviewed Gonzalez in connection with the reinstatement proceeding and expressly asked Gonzalez whether he "ha[d] any fear of persecution or torture should [he] be removed [from] the United States[.]"  Gonzalez refused to answer and invoked his right to remain silent.  Immigration officials did not deny Gonzalez the opportunity to claim he was lawfully admitted, that he feared returning to Mexico, or otherwise contest the determination that the

10

2001 order of removal should be reinstated.  Gonzalez simply declined those opportunities.

Third, Gonzalez argues that DHS failed to give him notice and an opportunity to respond to the reinstatement order.  Here the record demonstrates that Gonzalez was given notice of the reinstatement determination.  And that notice included a section that asked Gonzalez to indicate—by checking the appropriate box—whether he "wish[ed] to make a statement contesting this determination."  Gonzalez did not complete the form, and an immigration official and a witness noted that Gonzalez refused to sign the form.  Thus, Gonzalez was not deprived of notice and an opportunity to respond.  He chose not to respond to or contest the reinstatement order.

Fourth, and finally, Gonzalez argues that DHS failed to confirm that he had unlawfully reentered the United States.  According to Gonzalez, immigration officials simply noted in the reinstatement order that he unlawfully reentered the United States on an "unknown" date at or near an "unknown" location and failed to investigate whether Gonzalez had indeed reentered unlawfully.  We disagree.  We "presume that . . . [DHS] complied with all regulatory requirements" and Gonzalez "has adduced no evidence to the contrary."  *Sierra Club v. U.S. Army Corps of Eng'rs*, 295 F.3d 1209, 1223 (11th Cir. 2002).  It should come as little surprise that immigration officials did not know when, where, or how Gonzalez reentered the

11

United States because he remained silent and refused to sign any sworn statements. Section 241.8(a)(3) requires immigration officials to determine whether an alien reentered the United States unlawfully. It does not require immigration officials to determine the precise date or location of such reentry. And we note that, on appeal, Gonzalez does not contest the fact that he reentered the United States unlawfully.[8]

In short, DHS did not violate any regulations in the process of reinstating the 2001 order of removal.[9]

### C.     Gonzalez's Due Process Claim

Finally, Gonzalez argues that DHS violated his Fifth Amendment right to due process by arbitrarily disregarding the regulations governing reinstatement of removal. Gonzalez cannot establish either prong of the due process analysis. First,

---

[8] Gonzalez advances two additional and related arguments. First, Gonzalez argues that the reinstatement order is defective and unenforceable because the specifics of Gonzalez's reentry into the United States are "unknown." He maintains that the absence of these details amounts to a "failure to specify integral information" required by 8 C.F.R. § 241.8(a)(3), thereby depriving the reinstatement order "of its essential character," citing *Perez-Sanchez v. U.S. Attorney Gen.*, 935 F.3d 1148 (11th Cir. 2019) (quoting *Pereira v. Sessions*, 138 S. Ct. 2105 (2018)) (alteration omitted). *Perez-Sanchez* is easily distinguishable. There, we held that a notice to appear was deficient because it did not include the date and time for a hearing as required by statute. *Id.* at 1153–54. Here, as we explained, the reinstatement order satisfied the requirements of § 241.8(a). Second, Gonzalez argues that the official who signed the reinstatement order failed to determine whether Gonzalez reentered the United States unlawfully and consider all relevant evidence. We disagree for the reasons set forth above.

[9] Gonzalez also argues that DHS violated its regulations by enforcing an invalid removal order. We will not consider this argument because it would require us to review the underlying expedited order of removal. As we have explained, we lack jurisdiction to review such an order. *See* 8 U.S.C. § 1252(a)(2)(A) and (e).

as we have explained, DHS abided by the governing regulations and, thus, Gonzalez cannot "show that []he was deprived of liberty without due process of law." *Lapaix*, 605 F.3d at 1143.  Second, Gonzalez does not argue that DHS erred when it determined that (1) he was "subject to a prior order of removal," (2) he was "in fact an alien who was previously removed," and (3) he "unlawfully reentered the United States."  8 C.F.R. § 241.8(a).  Because Gonzalez does not contest the three conditions of reinstatement, he cannot show any resulting prejudice from DHS's purported violations.  *See Avila*, 560 F.3d at 1286 ("[When] the three elements of § 241.8 are satisfied, [a petitioner] cannot show substantial prejudice from his alleged inability to contest the reinstatement decision.").

## III.   CONCLUSION

For the reasons explained, we lack jurisdiction to consider some of Gonzalez's arguments.  His remaining arguments are meritless.

**Petition DISMISSED in part and DENIED in part.**

13