[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 19-14316

_____

SEAN ANTHONY BLAKE,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petitions for Review of a Decision of the
Board of Immigration Appeals
Agency No. A097-956-239

_____

2                    Opinion of the Court                    19-14316

_____

No. 20-11335

_____

SEAN ANTHONY BLAKE,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petitions for Review of a Decision of the
Board of Immigration Appeals
Agency No. A097-956-239

_____

_____

No. 21-12334

_____

SEAN ANTHONY BLAKE,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

————————————

Petitions for Review of a Decision of the
Board of Immigration Appeals
Agency No. A097-956-239

————————————

Before ROSENBAUM, JILL PRYOR, Circuit Judges, and ALTMAN,*
District Judge.

PER CURIAM:

Sean Anthony Blake seeks review of three decisions of the
Board of Immigration Appeals ("BIA") denying his motions to re-
open removal proceedings to apply for protection under the Unit-
ed Nations Convention Against Torture and Other Cruel, Inhu-
man, or Degrading Treatment or Punishment ("CAT").[1] Because

---

*Honorable Roy Altman, United States District Judge for the Southern Dis-
trict of Florida, sitting by designation.

[1] We write only for the parties, so we assume their familiarity with the fac-
tual and procedural background of this case and discuss only what is neces-
sary to explain our decision.

the BIA failed to give reasoned consideration to his motions, we grant Blake's petitions for review, vacate the BIA's decisions, and remand for further consideration.

I

Blake, a citizen of Jamaica, entered the United States unlawfully and was ordered removed in 2005. After his removal, he twice reentered illegally and was ordered removed again in 2008 and in 2009. While incarcerated following his 2009 conviction for illegal reentry, Blake cooperated with the federal government's investigation into Christopher "Dudus" Coke, a notorious drug trafficker in Jamaica for whom Blake had worked. In recognition of Blake's cooperation, the government released him from prison in 2012 and deferred his removal.

During the six years Blake lived and worked in the United States after his release, several of his family members in Jamaica faced violent retribution from Coke's gang, the Shower Posse. The Shower Posse burned down Blake's sister's house, bombed the home of the mother of Blake's children, killed six of his cousins, and forced his father to flee the country. Following Blake's arrest on a domestic violence charge in 2019, the government ended his deferred action and placed him in removal proceedings once again.

Blake then filed a motion to reopen his 2009 final order of removal. He submitted evidence regarding the Jamaican government's 2010 efforts to extradite Coke to the United States, which

included sending the army into a residential neighborhood, Tivoli Gardens, which was controlled by Coke. The resulting violent clash caused over 70 deaths and prompted an official government inquiry into the incursion and an apology to Tivoli Gardens residents, many of whom continued to support Coke. After Coke was extradited, Blake testified against him in 2012 and immediately became the target of death threats. His evidence showed that, from 2012 to 2019, the Shower Posse retaliated instead against his family in Jamaica, as described above.

The Immigration Judge ("IJ") denied Blake's motion on the grounds that it was untimely and failed to establish the material change in country conditions necessary to avoid the time bar. The IJ also concluded that Blake failed to make out a prima facie case for CAT relief. Blake appealed the IJ's decision to the BIA.

While the appeal was pending, a district court judge entered an order preventing Blake's removal during separate habeas proceedings. But, due to an administrative error, in May 2019 immigration officials removed him to Jamaica. He spent only a few hours in Jamaica before two men, one with a large knife and the other with a gun, tracked him down and gave chase. He fled and escaped injury. With help from the U.S. Embassy, he secured a flight back to federal detention in the United States.

The BIA denied Blake's appeal from the denial of his motion to reopen, agreeing with the IJ that the motion was time-barred. Blake petitioned this Court to review the denial and sought an emergency stay of removal pending our decision. *Blake*

v. *U.S. Att'y Gen.*, 945 F.3d 1175 (11th Cir. 2019) ("*Blake I*"). We denied the stay, concluding that Blake had failed to meet his "heavy burden" to show that his petition for review was likely to succeed on the merits. *Id.* at 1178, 1180 (internal quotation marks omitted).

Blake then filed a second motion to reopen with the BIA. New evidence accompanied this motion, including his account of the recent attempt on his life in Jamaica, evidence that the Shower Posse had murdered his brother and sent a photograph of the body to Blake's children's mother, articles from Jamaican and American news outlets reporting on Blake's cooperation and involuntary return to Jamaica, and social media posts warning that he would be killed if he again returned to Jamaica. The BIA denied his motion as barred both by time and by the limitation on the number of motions to reopen that can be filed. Blake again petitioned this Court for review. He also asked for a stay of removal, which we granted.

Meanwhile, Blake filed a third motion to reopen before the BIA. In support of the same arguments, the motion included new evidence from a professor of Jamaican history detailing the Shower Posse's long-standing entanglement with the Jamaican government and police. Over one Board member's dissent, the BIA denied his motion, again concluding that his arguments on changed country conditions were insufficient to overcome the time and number limitations for motions to reopen. Once again Blake petitioned this Court for review.

We consolidated Blake's three petitions for review of the BIA's decisions denying his motions to reopen removal proceedings. After careful consideration and with the benefit of oral argument, we grant the petitions, vacate the BIA's decisions, and remand for further proceedings.

## II

We review *de novo* whether the BIA has given reasoned consideration to a petitioner's arguments or evidence. *Ali v. U.S. Att'y Gen.*, 931 F.3d 1327, 1333 (11th Cir. 2019).

A noncitizen seeking to reopen removal proceedings must establish the existence of new or previously unavailable material evidence that would likely affect the outcome of his case. 8 C.F.R. § 1003.23(b)(3); *Matter of Coelho*, 20 I. & N. Dec. 464, 472 (BIA 1992). Generally, he must file his motion to reopen within 90 days after a final removal order and may file only one such motion. 8 U.S.C. § 1229a(c)(7)(C)(i), (c)(7)(A); *Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 872 (11th Cir. 2018). These limitations do not apply, however, when the noncitizen's motion to reopen seeks asylum or relief under CAT, is predicated on "changed country conditions arising in the country of nationality," and shows that the changed conditions are material and could not have been discovered at the time of the removal proceedings. 8 C.F.R. §§ 1003.23(b)(4)(i); 1003.2(c)(3)(ii); *Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252, 1256 (11th Cir. 2009). To establish that the changed conditions are material, the noncitizen "must present evidence that demonstrates that, if the proceedings were opened, the new

evidence would likely change the result in the case." *Id.* at 1256–57.

Blake filed his first motion to reopen in 2019, 10 years after his final removal order in 2009. He has since filed two more motions to reopen. For the BIA to consider his motions to reopen despite the limitations on time and number of motions, he must establish a material change in country conditions. *See id.* at 1256. If he succeeds in making this showing, then the BIA can determine whether he made out a prima facie case for CAT relief that warrants reopening proceedings to evaluate his CAT claim on the merits. *See I.N.S. v. Doherty*, 502 U.S. 314, 330–31 (1992) (Scalia, J., concurring in part & dissenting in part) ("[T]he nature of the INS regulations is such that the term 'reopening' also includes, to a large extent . . . 'remand for further proceedings.'").

To enable our review, the BIA must give "reasoned consideration" to a petitioner's claims. *Jathursan v. U.S. Att'y Gen.*, 17 F.4th 1365, 1372 (11th Cir. 2021) (internal quotation marks omitted). When determining whether the BIA gave reasoned consideration, we ask whether its decision was based on "having evaluated the entire evidentiary record." *Ali*, 931 F.3d at 1333. After reviewing the record, "we must be left with the conviction, based on the record before us, that the [BIA] has considered and reasoned through the most relevant evidence of the case." *Id.* at 1331. We have held that the BIA fails to give reasoned consideration when it "misstates the contents of the record, fails to adequately explain its rejection of logical conclusions, or provides jus-

tifications for its decision which are unreasonable and which do not respond to any arguments in the record." *Id.* at 1334 (internal quotation marks omitted). Faced with a BIA decision lacking in reasoned consideration, "this court has granted petitions for review, vacated agency decisions, and remanded for further proceedings." *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1302 (11th Cir. 2015).

In his motions to reopen, Blake argued that changed country conditions existed and were material because the military incursion into Tivoli Gardens triggered vociferous support for Coke among the Jamaican people. Blake contended that the changed personal circumstance of his testimony against Coke drew the ire of Coke's supporters, resulting in the murder of Blake's cousins and brother, intimidation of his family members, the attempt on his life when he was returned to Jamaica, and an enduring threat to his safety. All three of the BIA's decisions reflected a failure to give reasoned consideration to these arguments and the evidence in support.

In its first decision denying Blake's motion to reopen, the BIA refused to consider the personal circumstance of his testimony against Coke. Its reason for refusing to consider this evidence ignored our precedent explaining that personal circumstances can be relevant to the changed-country-conditions determination. The BIA's second decision misstated the record, and its third decision relied on that misstatement.

Turning to the BIA's first decision, the BIA flatly stated that changes in personal circumstances cannot help establish changed country conditions. But the regulation it cited in support of this statement does not prohibit consideration of personal circumstances. *See* 8 C.F.R. § 1003.23(b)(4)(i). And our precedent shows that changed personal circumstances can, in some cases, be relevant to a determination of changed country conditions. *See Jiang*, 568 F.3d at 1257–58; *Zhang v. U.S. Att'y Gen.*, 572 F.3d 1316, 1320 (11th Cir. 2009). In *Jiang*, the petitioner was a citizen of China who had changed her personal circumstances by giving birth to two children. *Jiang*, 568 F.3d at 1254. She also presented evidence of a changed country condition—increased enforcement of China's one-child policy. *Id.* at 1254–55. We held that, taken together, the changed personal and country conditions established a prima facie case for asylum and warranted reopening removal proceedings. *Id.* at 1258; *see also Zhang*, 572 F.3d at 1320 (same). Because the BIA's first decision relied on a justification that was unsupported by the text of the regulation and contrary to our precedent, we remand to the BIA for further consideration.

Blake argued in his motions to reopen that his personal circumstances (testifying against Coke) made him more vulnerable to changed country conditions (increased support for Coke). The BIA never addressed the argument "in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 803 (11th Cir. 2016). In its second and third decisions, the BIA

concluded that Blake's evidence of the Shower Posse's retribution against cooperators, vigorous community support for Coke after his extradition, and government entanglement with gangs failed to establish a change in country conditions—without any analysis or explanation of how the BIA reached its conclusions. The BIA's failure to explain its reasoning prevents us from reviewing its decisions for error, so we must remand for a lack of reasoned consideration. *See Indrawati*, 779 F.3d at 1302.

In addition to the lack of analysis or explanation justifying its conclusion, the BIA's second decision misstated the contents of the record. It acknowledged that Blake feared returning to Jamaica because, while there, he had been chased by two men with weapons, likely in connection with his testimony against Coke. But it incorrectly stated that those events took place *before* he filed his first motion to reopen and faulted Blake for failing to present that evidence in that motion. This was a misstatement of the record, which demonstrated that Blake filed his first motion to reopen with the IJ in February 2019, and the IJ denied the motion in March. He was not removed to Jamaica until May. He could not have provided the IJ with evidence of his harrowing experience because it had not happened yet.

The BIA's incorrect characterization of the record causes us to question whether it evaluated the entire evidentiary record. *See Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1376 (11th Cir. 2006) (observing that a misstatement "undermine[s] the conclusion" that the judge "considered all the evidence"). For this reason, too,

12                      Opinion of the Court                      19-14316

we are unable to review the BIA's second decision. *See Bing Quan Lin*, 881 F.3d at 874.

The BIA's third decision concluded that the evidence failed to establish changed country conditions. But this conclusion rested on the second decision's mistake of fact—that the evidence of Blake's brief return to Jamaica was untimely and should not be considered. By perpetuating this error and adding no analysis, the BIA's third decision, too, failed to give reasoned consideration.

The BIA's failure in all three decisions to give reasoned consideration to Blake's evidence and arguments on changed country conditions forecloses meaningful review and requires us to remand the case.[2]

## III

Because the BIA has not afforded this case reasoned consideration, and because we will not substitute our own reasoning

---

[2] In so holding, we express no view on the merits of Blake's claims. As his own evidence shows, the Shower Posse has terrorized the Jamaican population with violence for many years, the gang's ties to the highest levels of the Jamaican government are long-standing, and its policy of retaliating against those who run afoul of it, including by cooperating with law enforcement, is nothing new. Blake himself first fled to the United States after the Shower Posse jailed him and caused him to fear for his life—actions that Blake believed were precipitated by Coke's worry that Blake was trying to take over leadership of the Shower Posse. We hold here only that the BIA's repeated failures to explain its reasoning—and its evident misstatements about the record—prevent us from meaningfully reviewing its decisions. Nothing more.

19-14316          Opinion of the Court          13

for that of the BIA, we **GRANT** Blake's petitions for review, **VACATE** the BIA's decisions, and **REMAND** the case to the BIA for further consideration of Blake's claim for relief under CAT. All pending motions are denied as moot.

**PETITION GRANTED.**