[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 23-11518

Non-Argument Calendar

————————————————

ALBERIC ISRAEL,
a.k.a. Alberie Israel,

                                                            Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

                                                            Respondent.

————————————————

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A042-355-073

_____

Before JILL PRYOR, NEWSOM, and BRANCH, Circuit Judges.

PER CURIAM:

Alberic Israel, proceeding *pro se*, seeks review of a Board of Immigration Appeals ("BIA") order denying as untimely his motion to reopen his removal proceedings so that he could present new evidence in support of his claim for deferral of removal under the Convention Against Torture ("CAT"). He argues that the BIA abused its discretion because his motion was based on changed country conditions that could not have been presented earlier, which established his eligibility for an exception to the time bar. After careful review, we deny Israel's petition.

## I.    Background

Israel, a native of Haiti, was admitted to the United States as a "Lawful Permanent Resident" in February 1990. In 2007, Israel was convicted of aggravated battery with a deadly weapon and was sentenced to twenty years' imprisonment for shooting his girlfriend, Sheila Mesadieu. Citing this conviction, in 2015, the Department of Homeland Security ("DHS") issued Israel a Notice to Appear ("NTA") before a United States Immigration Judge ("IJ") "to show why [he] should not be removed from the United States."[1]

---

[1] 8 U.S.C. § 1227(a)(2)(A)(iii) provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable."

In 2017, Israel appeared *pro se* before an IJ and admitted the factual allegations in the NTA. The IJ informed Israel that his only available relief was deferral of removal under the CAT. The IJ provided Israel an opportunity to file a CAT motion, and instructed Israel that he would need to "prove that [he was] going to be tortured by the [Haitian] government" if he was deported.

Israel then applied for asylum, withholding removal, and CAT relief. He claimed that he feared torture if he was removed to Haiti because Mesadieu's brother, Edwin, along with Mesadieu's cousin and two police officers, had killed Israel's brother in retaliation for Israel shooting Mesadieu. He stated that Edwin was "at large in Haiti, well off and connected," and that it was common knowledge that "Haiti is very corrupt," and police could be paid to put a hit on someone. And he stated that another member of Mesadieu's family was a police officer, and still another was a mayor. Ultimately, Israel stated that he feared that if he were deported he would be killed by a member of Mesadieu's family in retaliation for shooting Mesadieu.

The DHS submitted a country report for Haiti, which noted that civilian authorities had "effective control over the security forces," but that the "most serious impediments to human rights involved . . . the lack of an elected and functioning government; insufficient respect for the rule of law . . . ; and chronic widespread corruption." There were "isolated allegations of arbitrary and unlawful killings by government officials," and credible reports "of officials engaging in corrupt practices" despite government

attempts to prosecute officials who committed abuses. Civil groups "continued to allege widespread impunity" on the part of police officers who "committed abuses or fraud."

At the merits hearing on his application for asylum, withholding removal, and CAT relief, Israel reiterated his fear of the Haitian government, because Mesadieu's family had political power and Mesadieu's family had killed Israel's brother in retaliation for Israel shooting Mesadieu.

The IJ denied Israel's application and ordered Israel's removal to Haiti. The IJ found Israel removable for having been convicted of an aggravated felony and a firearm offense, which made him ineligible for asylum or withholding of removal. As to his request for deferral of removal under the CAT, the IJ found that Israel's testimony was insufficiently credible to meet his burden of proof, and that even if it were credible, he had not established a clear probability of government-involved torture. The BIA affirmed this ruling on appeal.

In February 2023, Israel filed another motion with the BIA, which he titled a "Renewed Request for Relief from Removal Proceedings," and which the BIA construed as a motion to reopen.[2] He stated that he wished to "rely upon new facts, information, and argument" in support of his request for CAT relief. He asserted

---

[2] Israel also filed a motion to reopen in 2019, which the BIA denied. We dismissed in part and denied in part Israel's petition on appeal. *Israel v. U.S. Att'y Gen.*, 861 F. App'x 371 (11th Cir. 2021).

that at the merits hearing, he had "put forth what facts were available to him at that time" to show his risk of being tortured or killed in Haiti, but that "[s]ince that time the circumstances in Haiti, especially as they would apply to [him] now, ha[d] dramatically changed."  He then stated:

> [A]s this governmental office is assuredly aware, Haiti's president was assassinated in 2021. A current country report will show that since that time the country has been overrun by [criminal] gangs with what government that still remains, including [Mesadieu's] aunt who is a mayor in Port-De-Paix and cousins who are police officers in St. Louis Du Nord, acting as their proxies.

Israel contended that if he were removed to Haiti now, he would "at a minimum . . . face total ostr[ac]ization (leading to a complete inability to survive)," and he had "no doubt, none whatsoever, that when returned to Haiti he [would] be killed."  As support, he asserted that he and some of his family members had "been advised that [Mesadieu's] family[,] who as previously mentioned either hold positions in the Haitian government themselves or hold strong influence over many others (especially police) who do," had vowed to avenge his "accidental[] shooting" of her, as well as her later death, "even though she actually died from causes unrelated to her being shot."  He stated that Mesadieu's family was "large and spread across the breadth of the country."  Israel did not submit any evidence or documents with his motion.

The BIA denied Israel's motion to reopen. The BIA determined that Israel's motion was untimely and did not establish his eligibility for an exception to the time bar. The BIA recognized that the time bar generally did not apply to motions that sought reopening to apply for asylum or withholding of removal based on changed country conditions, "if such evidence [was] material and was not available and could not have been discovered or presented at the former hearing." However, the BIA noted that Israel had not submitted any evidence of current conditions in Haiti, nor had he "meaningfully compared present conditions in Haiti with those that existed at the time of his 2017 [merits] hearing," despite referring to changed country conditions in his motion. Further, the BIA concluded that even if it took "administrative notice of the recent political upheaval and violence in Haiti, this [was] insufficient to show that [Israel was] personally at risk for torture upon his return." Finally, the BIA declined to exercise its *sua sponte* authority to reopen Israel's removal proceedings.

## II.    Discussion

Israel argues that the BIA erred by denying his motion to reopen as untimely because he was eligible for an exception to the time bar. Specifically, he argues that the time bar should not apply because his motion was based on changed conditions that could not have been presented at the prior hearing. Israel contends that, although his fear of retribution from Mesadieu's relatives and "their criminal proxies" is the same claim he presented in his original CAT application, "the [current] country conditions in Haiti have worsened to the point that the very people who intend to

harm [him] . . . can now act [with impunity] in carrying out their misguided revenge." He also argues that the BIA erred in faulting him for not submitting country conditions evidence because he lacked the means to procure such evidence while incarcerated. Nevertheless, he contends that it is "common knowledge" that Haiti is facing a "downward spiral into lawlessness and disorder," with a dramatic increase in the murder rate, proliferation of firearm possession, political instability, and worsening economic conditions." In light of these conditions, he argues that, if the matter were reopened, he would be able to present sufficient evidence—consisting of "affidavits [that his] family members will obtain"—to show that, if he were removed, "members of [the Haitian] government and their criminal gang member underlings will kill him."

We review the BIA's denial of a motion to reopen for abuse of discretion, which "is limited to determining whether the BIA exercised its discretion in an arbitrary or capricious manner." *Zhang v. U.S. Att'y Gen.*, 572 F.3d 1316, 1319 (11th Cir. 2009). Motions to reopen are generally disfavored because delay tends to work to the advantage of deportable aliens. *INS v. Doherty*, 502 U.S. 314, 323 (1992).

The INA provides that an alien may file one motion to reopen removal proceedings, and it must be filed within 90 days after issuance of the final administrative order of removal. 8 U.S.C. § 1229a(c)(7)(A), (C)(i). The 90-day time limit, however, does not apply to a motion that seeks reopening to apply for relief from

removal, including CAT relief, based on changed conditions in the country of removal, if the changed conditions are material and could not have been discovered during the removal proceedings. *Blake v. U.S. Att'y Gen.*, 945 F.3d 1175, 1178 (11th Cir. 2019); *see* 8 U.S.C. § 1229a(c)(7)(C)(ii).

"An alien who attempts to show that the [changed country conditions] evidence is material bears a heavy burden and must present evidence"—in the form of "affidavits or other evidentiary materials," 8 U.S.C. § 1229a(c)(7)(B)—"that demonstrates that, if the proceedings were opened, the new evidence would likely change the result in the case." *Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252, 1256–57 (11th Cir. 2009); *see also Blake*, 945 F.3d at 1179.[3] So where, as here, an alien seeks to reopen a motion for CAT relief, the alien must show that the changed country conditions would likely change the outcome in her case—that is, the changed conditions make it "more likely than not that he or she would be tortured if

---

[3] In addition to the statutory authority to reopen removal proceedings, the BIA has the *sua sponte* authority to reopen proceedings, upon written motion, at any time. 8 C.F.R. § 1003.2(a). We lack jurisdiction to review the BIA's refusal to *sua sponte* reopen removal proceedings, as this decision is committed to agency discretion by law and there are no meaningful standards governing the BIA's exercise of its discretion. *Lenis v. U.S. Att'y Gen.*, 525 F.3d 1291, 1293 (11th Cir. 2008).

23-11518                Opinion of the Court                9

removed to the proposed country of removal."    8 C.F.R. § 1208.16(c)(2).[4]

Here, the BIA did not abuse its discretion in denying Israel's motion to reopen as untimely.  First, it is undisputed that Israel filed his motion outside the general 90-day deadline.  8 U.S.C. § 1229a(c)(7)(C)(i). Second, the BIA did not abuse its discretion in concluding that Israel had not established changed country conditions, as required for the statutory exception to the time bar, because he did not submit any evidence with his motion.  *See* 8 U.S.C. § 1229a(c)(7)(B) ("The motion to reopen . . . shall be supported by affidavits or other evidentiary material.").  And third, the BIA did not abuse its discretion in finding that, even if the conditions were as Israel supposed—the assassination of Haiti's president, the rise of gang activity, and the Mesadieu family's governmental ties and desire to kill him—Israel did not meet the materiality requirement because that evidence is not "likely [to] change the result in the case." *Jiang*, 568 F.3d at 1257.  As to the presidential assassination and rise in gang violence, such assertions do not, on their face, materially increase the risk that Israel would be personally subject to government-involved torture within the meaning of the CAT.  *Zhang*, 572 F.3d at 1319; *Jiang*, 568 F.3d at 1257; *Blake*, 945 F.3d at 1179.  Moreover, corruption and criminal violence were conditions that were present in Haiti at the time of

---

[4] "Torture," as defined by the CAT, must be "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1).

Israel's initial motion in 2017, when he stated that "Haiti is very corrupt," and when the DHS submitted a country report documenting "chronic[,] widespread corruption." Similarly, as to the Mesadieu family's governmental ties and desire to kill him, Israel cited this same threat in his 2017 motion, so this is not a changed condition. Thus, even accepting Israel's unsupported statements as true, Israel has failed to show how conditions in Haiti have materially changed since his initial 2017 motion. Accordingly, we deny Israel's petition.

**PETITION DENIED.**